**George C. DEWEY, Appellant,**

v.

**Denise L. DEWEY, Appellee.**

**No. 13–87–115–CV.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 11, 1988.

Rehearing Denied March 10, 1988.

**516**

Barbara H. Fritz, Victoria, for appellant.

Jack W. Marr, Kelly, Stephenson, Marr & Lewis, Victoria, for appellee.

Before UTTER, KENNEDY, and DORSEY, JJ.

## OPINION

UTTER, Justice.

This appeal is from a judgment which granted a divorce to the parties and divided the parties' community estate. We affirm the judgment of the trial court.

The parties were married on March 18, 1984, after having executed a pre-marital agreement. Appellee filed suit for divorce on December 8, 1985, but later non-suited her petition and proceeded on appellant's cross-petition for divorce. On April 28, 1986, a decree of divorce and property division was approved and signed by the parties, their respective attorneys, and the court.

Appellee filed a motion for new trial on May 9, 1986, alleging she had been mentally incompetent when the above divorce decree was entered. After hearing the motion, the court set aside the April 28, 1986, divorce decree in its entirety, and granted a new trial. After a jury trial, the final judgment was signed granting a divorce to the parties and dividing the property therein.

Appellant contends in his first point of error that the trial court erred by granting a new trial on both the divorce and the property issues because appellee did not request that the divorce be set aside in her motion for new trial. Appellant complains that he was harmed by the court's setting aside the "divorce" because after the April 28, 1986, divorce decree was approved, he allegedly transferred certain funds from his separate property into his retirement account. Appellant asserts that the trial court viewed appellant's action as transforming separate property into community property because the community estate had been extended up until the December 19, 1986, judgment setting aside the divorce was entered by the trial court.

In her motion for new trial, appellee requested that the "Final Decree of Divorce" should be set aside and a new trial granted. Appellee thereafter stated in her motion that she was requesting a new trial because she was of unsound mind at the time the decree was entered and was incapable of making rational divisions of their community assets. Nowhere did she limit her motion for new trial to the division of property.

█ Even if appellee had limited her request to the issue of property division, the court, in granting a new trial, would not have been restricted to the grounds set forth in the motion for new trial. *Napier v. Napier*, 555 S.W.2d 186, 188–89 (Tex.Civ. App.—El Paso 1977, no writ); *Brown v. American Finance Co.*, 432 S.W.2d 564, 567 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). Furthermore, the issue of divorce and the issue of property division are neither separable nor severable under Tex.R. Civ.P. 41, 174, and 320. *Vautrain v. Vautrain*, 646 S.W.2d 309, 315 (Tex.App.— Fort Worth 1983, writ dism'd); *Underhill v. Underhill*, 614 S.W.2d 178, 181 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.). We hold there was no final judgment of divorce until December 19, 1986, when all issues and parties of the case were disposed of. Appellant's first point of error is overruled.

Appellant contends in his second point of error that the court erred in finding the parties had accumulated a community estate, because the pre-marital agreement precluded it. Appellant complains in his third point of error that the court erred in refusing to disregard the jury's answer to special issue number five because the answer was contrary to the great weight and preponderance of the evidence. Special issue number five asked the jury to determine whether the parties, in executing the pre-marital agreement, intended to make the income of each party the separate property of the party receiving the income. The jury answered that the parties did not.

In considering a "no evidence", "insufficient evidence", or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established test set forth in *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.*, 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Allied Finance Co. v. Garza*, 626 S.W.2d 120 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Texas L.Rev. 361 (1960).

Neither party complains of the validity of the pre-marital agreement. The pre-marital agreement should be interpreted according to the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393–94 (Tex.1983); *Miller v. Miller*, 700 S.W.2d 941, 951 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). No single provision taken alone will be given controlling effect; rather, every provision must be considered with reference to the whole instrument. *Coker*, 650 S.W.2d at 393–94.

The pre-marital agreement clearly states that all profits, dividends, interest, and proceeds that accumulate after marriage from each of the parties' separate property will remain that party's separate property. Appellant thereafter listed his professional corporation, George C. Dewey, M.D., P.A., as part of his separate property.

■ Appellant's professional corporation and appellant are legally distinct entities. *Cf. Sun Towers v. Heckler*, 725 F.2d 315, 331 (5th Cir.1984), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984); *Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 222 (1943). The corporate entity is the owner, and any contribution made by appellant to the professional corporation became corporate property which may not be characterized as either the separate or community property of the individual stockholders. *Cf. Marshall v. Marshall*, 735 S.W.2d 587, 594 (Tex.App.—Dallas 1987, writ ref'd n.r.e.) (applies rule to contributions made to spouse's partnership). Any rights or ownership interest appellant had in the professional corporation, however, could and did become appellant's separate property by virtue of the pre-marital agreement as did any profits, dividends, interest, or proceeds which accrued therefrom. *Williams v. Williams*, 720 S.W.2d 246, 249–50 (Tex.App.—Houston [14th Dist.] 1986, no writ).

■ The pre-marital agreement, however, did not mention appellant's salary received from the corporation during marriage; nor did it state that there would be no accumulation of a community estate. It merely asserted that the listed property and all profits, dividends, interest and proceeds resulting from that property should remain appellant's separate property. Since appellant's income was not expressly listed in the pre-marital agreement and it was apparently acquired during marriage, it was clearly community property. Tex. Fam.Code Ann. §§ 5.01, 5.02 (Vernon 1975); *Maben v. Maben*, 574 S.W.2d 229, 232 (Tex. Civ.App.—Fort Worth 1978, no writ). Therefore, there is no ambiguity present on the face of the agreement and parol evidence shall not be considered. *Miller*, 700 S.W.2d at 951. We find the evidence presented was sufficient to support the jury's answer. Appellant's second and third points of error are overruled.

Appellant contends in his sixth point of error that the trial court impermissibly invaded his separate estate by awarding certain jewelry to appellee. Appellant argues

that he received the jewelry as a "gift" from appellee and that it was part of his separate estate.

Three elements are necessary to establish the existence of a gift: 1) intent to make a gift; 2) delivery of the property; and 3) acceptance of the property. *Grimsley v. Grimsley*, 632 S.W.2d 174, 177 (Tex. App.—Corpus Christi 1982, no writ). Moreover, it was appellant's burden to show a gift had been made. *Diaz v. Cantu*, 586 S.W.2d 576, 580 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■ The record reveals that appellee "intended to return" the jewelry and that she delivered the jewelry to appellant and that appellant apparently accepted the jewelry. However, no evidence was presented that appellee intended to make a "gift" of the jewelry to appellant. On the contrary, the evidence indicates that appellant's mental condition had been deteriorating since March of 1986, and that she was depressed and didn't care about anything. In fact, the April 28, 1986 decree of divorce was later set aside by the court because appellee was not mentally competent to enter into a valid, binding contract at that time. Based on this evidence, the jury found that appellee did not make a gift of her jewelry to appellant. The evidence was sufficient to support the jury's answer. Appellant's sixth point of error is overruled.

Appellant contends in his seventh point of error that the trial court erred in characterizing the George C. Dewey, M.D., P.A. Defined Contribution Plan as community property because the plan was both owned by appellant's separate property professional association and established prior to the parties' marriage. Appellant complains in his ninth point of error that the trial court erred in refusing to disregard the jury's answers to special issues No. 7 and No. 9 because the evidence was insufficient as a matter of law or was against the great weight and preponderance of the evidence.

*Special Issue No. 7:*

Do you find from a preponderance of the evidence that monies deposited by George C. Dewey, M.D., P.A. into the George C. Dewey Defined Contribution Plan were profits and/or proceeds of the professional association?

The jury answered, "We do not."

*Special Issue No. 9:*

From a preponderance of the evidence, do you find that the George C. Dewey Defined Contribution Pension Plan is the separate property of George C. Dewey? The jury answered, "We do not."

Retirement and pension plans are regarded as a mode of employee compensation earned during a given period of employment. *Cearley v. Cearley*, 544 S.W.2d 661, 662 (Tex.1976); *Whorrall v. Whorrall*, 691 S.W.2d 32, 37–38 (Tex.App.—Austin 1985, writ dism'd). It is also well established that an employee spouse's accrued benefits in a retirement and pension plan which have been earned during marriage, but which have not vested and matured at the time of divorce, constitute a contingent interest in property and a community asset subject to division upon divorce. *Cearley*, 544 S.W.2d at 666; *May v. May*, 716 S.W. 2d 705, 707 (Tex.App.—Corpus Christi 1986, no writ).

■ Appellant's contention that the Defined Contribution Plan belonged to appellant's separate property professional association is without merit. The record reveals that the professional association was appellant's employer and all rights to receipt of the plan's benefits were in appellant as an employee, not the professional association. Moreover, the pre-marital agreement merely states the Defined Benefit–Investment Fund Pension Plan is appellant's separate property, and does not mention appellant's Defined Contribution Plan. We find that the Defined Contribution Plan was not a continuation of the plan listed in the pre-marital agreement, but an entirely different plan. Therefore, the Defined Contribution Plan constituted community property subject to division on divorce.

■ Appellant relies on case law involving real property and stock acquisitions to support the proposition that since the Defined Contribution Plan was commenced prior to the parties' marriage, it was appellant's separate property. The inception of

title doctrine simply does not apply in cases involving retirement or pension benefits, and appellant has cited no cases involving pension plans in support of his proposition. The Defined Contribution Plan was clearly a form of deferred "employee" compensation. In fact, only upon reaching the normal retirement age, separation from service from the professional association, or upon becoming 100 percent disabled, would he be allowed to withdraw from the plan. The only pertinent time period, therefore, concerns that in which the parties were married. Any benefits in the pension plan which accrued on appellant's behalf during the marriage was community property subject to division on divorce. Tex.Const. art. XVI, § 15. Thus, the date the "professional association" originated the plan is irrelevant.

We conclude the trial court did not err in characterizing the Defined Contribution Plan as community property. We further conclude that the record, as a whole, reveals that there is sufficient evidence to support the jury's answers to special issues No. 7 and No. 9. Appellant's seventh and ninth points of error are overruled.

Appellant contends in his eighth point of error that the trial court erred in failing to reimburse appellant's separate estate for contributions made to the Defined Contribution Plan from appellant's separate property. Specifically, appellant argues that a portion of a $29,700 deposit to such plan made on April 29, 1986, came from an insurance policy which was owned by appellant's separate property professional association.

■ Since the professional association was appellant's employer, the source of the funds placed in the Defined Contribution Plan is immaterial. The professional association and appellant are legally distinct entities. If the professional association borrowed the money from an insurance policy to fund the pension plan, as argued in appellant's brief, then it is the professional association, and not appellant, who is liable for the debt. Appellant, in receiving the benefits, was simply being compensated for his work, which was clearly commu-

nity property. Thus, appellant has not met his burden of pleading and proving that expenditures were made from his separate property for the benefit of the community and that they were reimbursable. *Cf. Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1983); *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex.1984). Appellant's eighth point of error is overruled.

Appellant contends in his fourth and fifth points of error that the trial court erred in awarding appellee $20,000 in cash payable by appellant. Appellant complains that the award impermissibly invaded appellant's separate estate and thereby contravened the statutes and public policy of this state which prohibit alimony. Appellant's tenth point of error contends that the trial court abused its discretion in dividing the community estate because the division is so unequal as to be manifestly unjust.

In reviewing the actions of the trial court, there is a presumption that the trial court exercised its discretion properly. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974). The trial court has wide discretion in dividing the parties' community estate and that division should be corrected on appeal only where a clear abuse of discretion has been shown. *Murff*, 615 S.W.2d at 698; *Mata v. Mata*, 710 S.W.2d 756, 760 (Tex.App.—Corpus Christi 1986, no writ).

The trial court may order appellant to pay appellee "cash" even though community property did not consist of any cash. *Weaks v. Weaks*, 471 S.W.2d 454, 455 (Tex. Civ.App.—Beaumont 1971, writ dism'd). Moreover, the mere fact that the community estate is not divided equally does not constitute an abuse of discretion as long as there is a reasonable basis for that division. *Mata*, 710 S.W.2d at 760; *Voronin v. Voronin*, 662 S.W.2d 102, 106–07 (Tex.App.—Austin 1983, writ dism'd). Factors to be considered include: 1) the relative earning capacity and business experience of the parties; 2) the educational background of the parties; 3) the size of separate estates; 4) the age, health and physical condition of the parties; 5) the fault in breaking up the marriage; 6) the benefits the innocent

**520**

spouse would have received had this marriage continued; and 7) the probable need for future support. *Zamora v. Zamora,* 611 S.W.2d 660, 662 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Erger v. Erger,* 590 S.W.2d 186, 188 (Tex.Civ.App.—Fort Worth 1979, writ dism'd); *Cooper v. Cooper,* 513 S.W.2d 229, 233–34 (Tex.Civ.App.—Houston [1st Dist.) 1974, no writ).

■ At the outset, we find that the $20,000 cash award to appellee was entirely referrable to community assets available upon dissolution of the marriage. The accumulated value of the Defined Contribution Plan and the Bon Aire residence alone were in excess of the $20,000 cash award to appellee. The fact that there is still an indebtedness on some of these community assets is irrelevant. Their total equity value is still in excess of $20,000.00. We conclude, therefore, that the award neither impermissibly invaded appellant's separate estate, nor constituted alimony in contravention of statutes and public policy.

■ We further find the trial court did not abuse its discretion in dividing the community property. Appellant was a radiologist with an annual gross income in excess of $200,000. His separate property professional association generated approximately $336,000 per year and offered him numerous fringe benefits, most of which were granted at his own discretion because he was the association's only employee. Appellant's separate estate was extremely large and included among others, a separate property residence, bank accounts, pension plan benefits accrued prior to marriage, and an I.R.A. Appellee, on the other hand, was a charge nurse earning around $18,000 per year (although her most recent tax records reflected earnings of only $9,707) and was in poor health. In addition, the jury found appellant was at fault in breaking up the marriage by finding him guilty of such cruel treatment towards appellee, that further living together was insupportable. Appellant's fourth, fifth and tenth points of error are overruled.

The judgment of the trial court is AFFIRMED.