Affirmed in Part and Reversed and Remanded in Part and Majority and
Dissenting Opinions filed November 29, 2007








Affirmed in
Part and Reversed and Remanded in
Part and Majority and Dissenting Opinions filed November 29, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00975-CV

____________

 

MONA ELLEN WILLIAMS, Appellant

 

V.

 

BILLY JACK WILLIAMS, Appellee

 



 

On Appeal from the 328th
District Court

Fort Bend County, Texas

Trial Court Cause No. 03CV133060

 



 

M A J O R I T Y   O P I N I O N








Mona Ellen Williams appeals from the trial court=s judgment of
divorce and its interpretation of the parties= premarital
agreement.  In her sole issue, Mona contends the trial court reversibly erred
in its interpretation of the parties= premarital
agreement and its finding that, pursuant to the terms of this agreement, there
was no community property in the marital estate.  Because we agree that the
trial court erred in its interpretation of the premarital agreement and thus,
in its characterization of the parties= Asalaries, wages,
and other income earned during the marriage@ as their separate
property, we reverse that portion of the trial court=s judgment
regarding the division of the marital estate and remand to the trial court for
further proceedings consistent with this opinion.  We affirm the trial court=s judgment in all
other respects.

Factual
and Procedural Background

On April 21, 1990, Mona and Billy Jack (AB.J.@) Williams were
married.  One day earlier, the parties executed an AAgreement in
Contemplation of Marriage@ (Athe premarital
agreement@),[1]
the terms of which are the subject of this appeal.  The premarital agreement
provided, in pertinent part:

1.1  Purpose.  It is the general intention of the
parties that the separate character of the properties of each will be preserved
after the marriage from the standpoint of management, accounting, liabilities,
ownership, and otherwise, subject at all times to their unrestricted right by
mutual agreement to modify or rescind their contract; and it is their general
intent that from a property standpoint their respective rights as they exist at
the date of the marriage and as they may exist thereafter will continue with
like effect without change of the character of the property.

Without in any
manner limiting the remaining provisions of this agreement, it is, therefore,
the parties= general purpose, intent and agreement that (I) each
will continue to own and to manage his or her separate property, respectively,
(ii) all revenues, increases, and income from such separate property and from
their respective personal efforts will be separate property, subject to the
sole management and control by the party whose separate property generated such
revenues, increases, property, or income, (iii) the separate estate of each
party, respectively, will bear all of such party=s obligations and
liabilities presently existing or hereafter undertaken or arising, (iv) their
respective separate property and all increases in value, mutations, additions
and income therefrom will remain the separate property of the party owning same
at the time of the marriage.








Thirteen years later, B.J. filed an original petition for divorce;
Mona responded with an answer and a counter-petition for divorce.  During the
divorce proceedings, Mona sought a declaratory judgment that the salaries
earned by the parties during their marriage were not covered by the premarital
agreement, and therefore were community property and part of the community
estate.  The trial judge conducted a hearing, at which Mona=s counsel
presented the testimony of four witnesses, including Mona, over B.J.=s continuing
objections.  After the hearing, the trial judge faxed a draft ruling to the
parties.  In his ruling, the trial judge stated:

The Court finds that the following
language is dispositive: . . . A(ii) all revenues, increases, and
income from such separate property and from their respective personal efforts
will be separate property,@ . . . It appears that the clear meaning
of these clauses says: . . . income . . . from their respective personal
efforts . . . is to continue to be their separate property after marriage. 
Supporting this position is the testimony that there was never a joint account,
that the parties put their salaries, wages, etc. into accounts only held by the
person earning those wages, salaries, etc.

(emphasis
in original).  The trial court ultimately ruled that the Asalaries, wages,
and other income of each party remained that person=s separate
property.@  Several weeks later, the trial court issued its
order on Mona=s petition for declaratory judgment, which
incorporated the terms of the draft ruling and decreed that, pursuant to the
language of the premarital agreement, Ano community
property was acquired by either party as a result of their respective salaries,
wages, and other income earned during the marriage.@








Finally, on June 6, 2005, the trial court issued its final
decree of divorce.  The decree incorporated the trial court=s declaratory
judgment order and, based on the findings reflected in that order, declared
that no community property existed in the marital estate.  At Mona=s request, the
trial court thereafter issued findings of fact and conclusions of law.  Among
other things, the trial court found that the premarital agreement was Ainclusive of
salaries, wages, and other income of each party and as such salaries, wages,
and other income remain the separate property of the respective party earning
such.@  The trial court
also found that Ano community property [was] accumulated
during the course of the marriage.@  Based on the
terms of the premarital agreement, the trial court entered a conclusion of law
that Ano community
property existed to be divided by the Court.@  This appeal
followed.

Issue
on Appeal

Mona challenges the trial court=s interpretation
of the premarital agreement and its finding that no community property existed
in the marital estate for the court to divide.  Mona contends that the language
of the premarital agreement is ambiguous, and that there is no evidence to
support the trial court=s construction of that agreement. 
Alternatively, she asserts that, if this Court determines that the premarital agreement
is unambiguous, the trial court=s finding is against the great weight and
preponderance of the evidence presented at trial.  She urges this Court to
either (1) hold as a matter of law that the premarital agreement does not
address the wages and salaries earned by the parties during marriage, and
remand the case to the trial court with instructions to divide the marital
estate in a manner consistent with this Court=s ruling; or (2)
remand the case to the trial court to hear additional evidence on the
applicability of the premarital agreement to the wages and salaries of the
parties earned during marriage.

For the following reasons, we agree that, as a matter of
law, the premarital agreement does not address the wages and salaries earned by
the parties during marriage, and therefore, they retained their status as
community property.  As a result, we reverse that portion of the trial court=s judgment
regarding the division of the marital estate and remand for further proceedings
consistent with this opinion.  We affirm the trial court=s judgment in all
other respects.

Analysis

A.      Standard
of Review and Applicable Law.








Generally, in Texas, courts interpret premarital agreements
like other written contracts. See, e.g., Beck v. Beck, 814 S.W.2d
745, 748B49 (Tex. 1991); Osorno
v. Osorno, 76 S.W.3d 509, 510B11 (Tex. App.CHouston [14th
Dist.] 2002, no pet.).  In interpreting a written contract, the primary
concern of the court is to ascertain the true intentions of the parties, as expressed
in the instrument. Lenape Res. Corp. v. Tenn. Gas Pipeline Co., 925
S.W.2d 565, 574 (Tex. 1996).  The Texas Supreme Court has admonished courts to
examine and consider the entire writing in order to accomplish this objective. Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983).  This is so that the
court can Aharmonize and give effect to all the provisions of the
contract, so that none will be rendered meaningless.@ Id.  No
single provision, considered alone, is to be given controlling effect; instead,
all contractual provisions must be considered with reference to the whole
instrument. Id. All language should be given its plain
grammatical meaning unless doing so would defeat the parties= intent. DeWitt
County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 101 (Tex. 1999).

One important distinction does exist between the
construction of premarital agreements and normal contracts.  Premarital
property agreements we construe narrowly in favor of the community estate.  Fischer-Stoker v. Stoker, 174 S.W.3d 272, 278B79 (Tex. App.BBHouston [1st Dist.] 2005, pet.
denied); McClary v. Thompson, 65 S.W.3d 829, 837 (Tex. App.CFort Worth 2002, pet. denied).

As a preliminary matter, Mona contends that the premarital
agreement is ambiguous, and argues that the testimony presented at trial
supports her construction of the premarital agreement.  Conversely, B.J.
contends that the premarital agreement is unambiguous, and asserts that the
agreement has a Aclear meaning,@ as was determined
by the trial court.  We agree with B.J. that the premarital agreement is not
ambiguous and that it has a clear meaning.  However, we disagree with B.J.=s interpretation
of that agreement.

B.  The Premarital Agreement Is Not Ambiguous.

1.       Applicable
Law.








Whether a contract is ambiguous is a question of law for
the court. Id. at 394; Kurtz v. Kurtz, 158 S.W.3d 12, 18 (Tex.
App.CHouston [14th
Dist.] 2004, pet. denied).  If the written instrument is so worded that it can
be given a certain or definite legal meaning or interpretation, then it is not
ambiguous and the court will interpret the contract as a matter of law. Coker,
650 S.W.2d at 394.  In this situation, the contract will be enforced as
written, and parol evidence will not be admitted for the purpose of creating an
ambiguity or to give the contract a meaning different from that which its
language imports. Universal C.I.T. Credit Corp. v. Daniel, 150 Tex. 513,
243 S.W.2d 154, 157 (1951).

If, however, the meaning of a contract is uncertain and
doubtful, or reasonably susceptible to more than one meaning, the contract is
ambiguous, and its meaning must be resolved by the factfinder. Lenape Res.
Corp., 925 S.W.2d at 574.  In this situation, the factfinder may look to
parol evidence to determine the parties= intent.  Id.  But,
the ambiguity must become evident when the contract is read in the context of
the surrounding circumstances, and not after parol evidence of intent is
admitted to create an ambiguity. Nat=l Union Fire Ins.
Co. v. CBI Indus., Inc., 907 S.W.2d 517, 521 (Tex. 1995).  Moreover,
the fact that the parties put forth conflicting interpretations does not create
an ambiguity. Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940
S.W.2d 587, 589 (Tex. 1996).

2.       The
Premarital Agreement is Not Reasonably Susceptible to More Than One
Interpretation.

When considered in its entirety, the premarital agreement
is not reasonably susceptible to more than one interpretation.  Nor is its
meaning uncertain or doubtful.  The agreement clearly expresses the parties= intent to (1)
retain the separate property character of the parties= already-existing
separate property, as of the date of the marriage; and (2) convert all
revenues, increases, and income acquired from the parties= separate
property  during marriage to separate property.[2]
 This intent is evident in the initial paragraph of the section entitled
APurpose@:








It is the general
intention of the parties that the separate character of the properties of each
will be preserved after the marriage . . . and it is their general
intent that from a property standpoint their respective rights as they exist at
the date of the marriage and as they may exist thereafter will continue with
like effect without change of the character of the
property . . . .

(emphasis
added).  This provision conveys the parties= general intent to
retain the separate property character of the parties= already-existing
separate property.  The use of the term Apreserved,@ in reference to
the character of the parties= separate property, clearly refers only to
that separate property in existence as of the date of the parties= marriage. See McClary, 65 S.W.3d at 838 (concluding that
the parties= use of the term Aremain,@ in reference to retirement benefits identified in the
parties= premarital agreement, clearly
referred only to those benefits that were separate property at the time the
premarital agreement was executed).

The parties= focus in their agreement on
already-existing separate property is further demonstrated in the second
paragraph of the section entitled APurpose@:

Without in any
manner limiting the remaining provisions of this agreement, it is, therefore,
the parties= general purpose, intent and agreement that (i) each
will continue to own and to manage his or her separate property, respectively,
(ii) all revenues, increases and income from such separate property and
from their respective personal efforts will be separate property, subject to
the sole management and control by the party whose separate property generated
such revenues, increases, property, or income, (iii) the separate estate of
each party, respectively, will bear all of such party=s obligations and
liabilities presently existing or hereafter undertaken or arising, (iv) their
respective separate property and all increases in value, mutations, additions
and income therefrom will remain the separate property of the party
owning same at the time of the marriage . . . .

(emphasis
added).  This provision, particularly the italicized text, clearly shows that
the parties were concerned solely with the separate property in existence as of
the date of the parties= marriage and Aall revenues,
increases, and income@ acquired therefrom during marriage.








First, as with the term Apreserved,@ the use of the
term Acontinue,@ in reference to
the parties= separate property, clearly refers only to that
separate property in existence at the time of the parties= marriage. See
id.  Second, the reference in subpart (ii) to Asuch separate
property@ clearly refers
only to that separate property.  While this subpart does serve to convert to
separate property the Arevenues, increases, and income@ acquired from the
parties= already-existing
separate property during the marriage, and from the parties= Apersonal efforts@ with respect to
that separate property, it does not, as B.J. contends, serve to convert
all wages and salaries earned by the parties during marriage to separate
property.  This is evident by the limitation included in the last clause
of subpart (ii), Asubject to the sole management and control
by the party whose separate property generated such revenues, increases,
property, or income.@  This clause, omitted from the trial
court=s declaratory
judgment order, clearly indicates that the term Arespective
personal efforts@ is to be considered only in conjunction
with the parties= already-existing separate property, and
limits the scope of the premarital agreement to the separate property
generating Asuch revenues, increases, property, or income.@  It cannot
reasonably be construed to address all wages and salaries earned by the parties
during marriage.

Finally, Paragraph 2.1 demonstrates the parties= intent with
respect to separate property acquired after marriage:

[I]n addition, all properties
which are hereafter acquired by each of the parties, respectively, by gift,
devise, or descent, or by purchase with or exchange for separate property of by
purchase with obligations binding only on the separate property of such party,
shall be and remain the separate property of each party.  Increases in
separate property (whether by reason of personal services, or otherwise), shall
be the separate property of the spouse who owned the separate property.  In
addition, all revenues, property, and income from the separate property of each
party (ASpecial Income@) shall be the
separate property of the party owning such separate property and become subject
to the sole management and control of such party . . . .








(emphasis
added).  The terms Ahereafter acquired@ clearly refer to
separate property acquired by the parties after marriage, and the final clause
signifies the parties= intent to convert all revenues, property,
and income acquired from the separate property of each party during marriage to
separate property.

Thus, when considered in its entirety, the premarital
agreement clearly evinces the parties= intent to retain
the separate property character of the parties= already-existing
separate property, as of the date of the marriage, and to convert all revenues,
increases, and income acquired from the parties= separate property
during marriage to separate property.  Nowhere does it purport to convert all
wages and salaries earned by the parties during marriage to separate property. 
As such, B.J.=s proffered interpretation of the effect of the
premarital agreement is both untenable and unreasonable.  Accordingly,
the premarital agreement is not reasonably susceptible to more than one
interpretation.  Nor is its meaning uncertain or doubtful.  Therefore, the
premarital agreement is not ambiguous.[3]
See Lenape Res. Corp., 925 S.W.2d at 574.

3.       McClary
and Dewey Support This Result.








Furthermore, two Texas courts of appeals decisions are
instructive as to the outcome of this appeal. See McClary, 65 S.W.3d at
838B39; Dewey v.
Dewey, 745 S.W.2d 514, 517 (Tex. App.CCorpus Christi
1988, writ denied).  In those cases, the parties executed premarital agreements
whose provisions did not expressly mention the parties= salaries,
earnings, income, or employment benefits earned or acquired during marriage.  See
McClary, 65 S.W.3d at 838; Dewey, 745 S.W.2d at 517.  Nor did the
premarital agreements explicitly exclude the creation of community property or
the accumulation of a community estate.  See McClary, 65 S.W.3d at 838; Dewey,
745 S.W.2d at 517.  In both cases, the appellants contended that the premarital
agreements operated to convert the salaries, income, and retirement benefits
earned or acquired by the parties during marriage to separate property.  See
McClary, 65 S.W.3d at 838 (salaries and income); Dewey, 745 S.W.2d
at 517 (retirement benefits).  And, in both cases, the court held that, since
the premarital agreements did not expressly mention the parties= salaries earned
during marriage, the premarital agreements were not ambiguous, and their plain
language did not alter the character of the salaries, income, or retirement
benefits earned or acquired by the parties during marriage. See McClary,
65 S.W.3d at 838B39; Dewey, 745 S.W.2d at 517.

As with McClary and Dewey, here the plain
language of the premarital agreement makes no mention of salary, earnings,
income, or employment benefits earned or acquired by the parties during
marriage. Moreover, no portion of the agreement provides that the wages and
salaries earned by the parties during marriage will become separate property. 
Accordingly, the premarital agreement is not ambiguous, and its plain language
does not affect the character of the wages and salaries earned by the parties
during marriage. See McClary, 65 S.W.3d at 838B39; Dewey,
745 S.W.2d at 517.

4.       Bradley
is Distinguishable.

B.J. relies upon Bradley v. Bradley, 725 S.W.2d 503
(Tex. App.CCorpus Christi 1987, no writ) in support of his
proffered interpretation of the premarital agreement.  In that case, the
parties executed a premarital agreement with a provision almost identical to
one at issue in the present case. See id. at 504.  That provision
contained the following language:

(b) that all revenues, increases,
and income from such separate property, and from their respective personal
efforts will be subject to the sole management and control of the party whose
separate property or personal efforts generated such revenues or
income . . . .








Id.
(emphasis
added).  However, another provision in the parties= premarital agreement
required the parties to enter into an annual partition and exchange agreement
in order to convert the income from the parties= personal efforts
to separate property. Id.  Because the parties failed to complete this
annual partition and exchange, the court held that the income generated from
the parties= personal efforts remained community property. Id. 
However, as B.J. notes, the court stated that the language of the premarital
agreement evinced the parties= intent to Aeffect a partition
and exchange of the parties= respective community interests in each
other=s personal
earnings,@ and Acontemplate[d] a partition and exchange of
community property interests in the future.@ Id.  B.J.
contends that, had the parties completed the requisite annual partition and
exchange, the court in Bradley would have held that income from the
parties= Apersonal efforts@ remained their
separate property.  B.J. urges this Court to hold that the language, Aincome from their
respective personal efforts,@ includes wage and salary income, as he
presumes the court in Bradley would have held.

Without deciding whether we agree with Bradley, we
find Bradley distinguishable.  There, the premarital agreement included
the phrase Aor personal efforts,@ which
strengthened the husband=s argument that personal efforts referred
to salaries and wages.  See id. at 504.  Below is the section both
agreements have in common, with the extra phrases from each marked:

all revenues, increases, and income
from such separate property and from their respective personal efforts will be
[separate property, (Mona and B.J.=s agreement)] subject
to the sole management and control of the party whose separate property [or
personal efforts (Bradley agreement)] generated such revenues [,
increases, property, (Mona and B.J.=s agreement)] or
income . . . .

The Bradley agreement, even though it does not
directly refer to salaries or wages, more strongly implies an intent to equate
personal efforts with wages and salaries than does Mona and B.J.=s agreement.

As a result, we find Bradley distinguishable and we
decline to follow it.

 

 

 








C.      As a
Matter of Law, the Premarital Agreement Does Not Address the Wages and Salaries
Earned by the Parties During Marriage.

Because the premarital agreement is not ambiguous, we may
construe the agreement as a matter of law.  Coker, 650 S.W.2d at 394; see
also Willis v. Donnelly, 199 S.W.3d 262, 275 (Tex. 2006) (AThe construction
of an unambiguous written contract is a question of law for the court.@).  As a matter of
law, the premarital agreement does not address the wages and salaries earned by
the parties during marriage. See McClary, 65 S.W.3d at 838B39; Dewey,
745 S.W.2d at 517.  Consequently, the wages and salaries earned by the parties
during marriage are community property, and the trial court erred in finding
that there was no community property to be divided by the court in the divorce
proceeding. See Tex. Fam. Code ' 3.002; Bell, 832 S.W.2d at
752.

Furthermore, because the trial court erred in
characterizing the sole asset of the community estate, we must remand to the trial
court for a determination of the community estate and a just and right division
of the parties= community property. Evans v. Evans, 14 S.W.3d
343, 347 (Tex. App.CHouston [14th Dist.] 2000, no pet.)
(citing In re Marriage of Taylor, 992 S.W.2d 616, 621 (Tex. App.CTexarkana 1999, no
pet.)) (holding that when the trial court mistakenly characterizes property
that constitutes the main asset of the community estate, the error is of such a
magnitude that it materially affects the just and right division of the
community estate, and the appellate court must remand the entire community
estate for a just and right division); see also Bradley, 725 S.W.2d at
505.








The
Dissent notes that Mona failed to challenge the property division as not being
just and right, and asserts that Mona failed to cite record evidence of (1) the
amount of any funds of any kind that remained in either spouse=s possession at the time of divorce;
and (2) the extent to which any such funds included salary or wages earned by
either spouse during the marriage.  The Dissent concludes that, ABy addressing the merits of the
community property characterization of wages without any indication in our
record that any such wages exist or their amount, the Majority is issuing an
advisory opinion for which we have no jurisdiction.@  However, the trial court had no
occasion to consider whether and in what amounts any such funds existed at the
time of trial, as the trial court expressly ruled in the declaratory judgment
action Mona filed that, pursuant to the terms of the premarital agreement, no
community property existed to be divided by the court.  When the trial court
decided in the declaratory judgment action that there was no community property
for the court to divide, the parties would not need to attempt to demonstrate
the existence and amount of any such funds.  Given our resolution of this
appeal, this is a matter to be resolved upon remand to the trial court.

Conclusion

Because the trial court erred in its interpretation of the
premarital agreement, we reverse that portion of the trial court=s judgment
regarding the division of the marital estate and remand for further proceedings
in accordance with this opinion, including a determination of the community
estate and a just and right division of the parties= community
property.  We affirm the trial court=s judgment in all
other respects.

 

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Majority and Dissenting Opinions filed November 29, 2007.

Panel consists of
Justices Fowler, Frost and Senior Justice Edelman* (Edelman, J., dissenting).

 

 









[1]  On November 5, 2004, the parties filed a Rule 11 agreement with the
trial court in which they stipulated that the premarital agreement was valid
and enforceable. Accordingly, the validity of the premarital agreement
is not at issue.





[2]  Under the Texas Family Code, community property
consists of property other than separate property that is acquired by either
spouse during the marriage. Tex. Fam.
Code ' 3.002.  The salaries and wages earned by the parties
during marriage are community property. Bell v. Moores, 832 S.W.2d 749,
752 (Tex. App.CHouston [14th Dist.] 1992, writ denied).  In addition, when separate property produces
income, and that income is acquired by a spouse during marriage, it is
community property. McClary, 65 S.W.3d at 834.  The parties sought to
avoid the latter through Paragraph 1.1(ii) of the premarital agreement.





[3]  Our conclusion that the premarital agreement is not
ambiguous is further supported by the testimony of attorney Linda Jackson
regarding the circumstances surrounding the drafting of the premarital
agreement.  Jackson testified that she deleted a paragraph regarding the
parties= salaries and compensation from employment from the
prior draft of the premarital agreement.  This testimony supports our
conclusion that the parties did not intend the premarital agreement to address
the wages and salaries earned by the parties during marriage.  Because the
testimony explains the circumstances surrounding the drafting of the agreement,
and does not otherwise vary or contradict the meaning of the premarital
agreement, it is proper evidence to be considered by the Court in our
determination of whether the agreement is ambiguous. See Sun Oil Co.
(Delaware) v. Madeley, 626 S.W.2d 726, 731B32 (Tex. 1981).





*           Senior Justice Richard H. Edelman sitting by assignment