Mona Ellen WILLIAMS, Appellant,

v.

Billy Jack WILLIAMS, Appellee.

No. 14–05–00975–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 29, 2007.

Rehearing Overruled Jan. 31, 2008.

Michael E. Orsak, Richmond, Lynne Liberato, Katharine Davenport David, Houston, for appellant.

Logene L. Foster, Sugar Land, Lynn S. Kuriger, Warren Cole, Houston, for appellee.

Panel consists of Justices FOWLER, FROST and Senior Justice EDELMAN *.

## MAJORITY OPINION

WANDA McKEE FOWLER, Justice.

Mona Ellen Williams appeals from the trial court's judgment of divorce and its interpretation of the parties' premarital agreement. In her sole issue, Mona contends the trial court reversibly erred in its interpretation of the parties' premarital agreement and its finding that, pursuant to the terms of this agreement, there was no community property in the marital estate. Because we agree that the trial court erred in its interpretation of the premarital agreement and thus, in its characterization of the parties' "salaries, wages, and other income earned during the marriage" as their separate property, we reverse that portion of the trial court's judgment regarding the division of the marital estate and remand to the trial court for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

### Factual and Procedural Background

On April 21, 1990, Mona and Billy Jack ("B.J.") Williams were married. One day earlier, the parties executed an "Agreement in Contemplation of Marriage" ("the premarital agreement"),[1] the terms of which are the subject of this appeal. The

---

* Senior Justice Richard H. Edelman sitting by assignment

1. On November 5, 2004, the parties filed a Rule 11 agreement with the trial court in

premarital agreement provided, in pertinent part:

1.1 *Purpose.* It is the general intention of the parties that the separate character of the properties of each will be preserved after the marriage from the standpoint of management, accounting, liabilities, ownership, and otherwise, subject at all times to their unrestricted right by mutual agreement to modify or rescind their contract; and it is their general intent that from a property standpoint their respective rights as they exist at the date of the marriage and as they may exist thereafter will continue with like effect without change of the character of the property.

Without in any manner limiting the remaining provisions of this agreement, it is, therefore, the parties' general purpose, intent and agreement that (i) each will continue to own and to manage his or her separate property, respectively, (ii) all revenues, increases, and income from such separate property and from their respective personal efforts will be separate property, subject to the sole management and control by the party whose separate property generated such revenues, increases, property, or income, (iii) the separate estate of each party, respectively, will bear all of such party's obligations and liabilities presently existing or hereafter undertaken or arising, (iv) their respective separate property and all increases in value, mutations, additions and income therefrom will remain the separate property of the party owning same at the time of the marriage.

Thirteen years later, B.J. filed an original petition for divorce; Mona responded with an answer and a counter-petition for divorce. During the divorce proceedings, Mona sought a declaratory judgment that the salaries earned by the parties during their marriage were not covered by the premarital agreement, and therefore were community property and part of the community estate. The trial judge conducted a hearing, at which Mona's counsel presented the testimony of four witnesses, including Mona, over B.J.'s continuing objections. After the hearing, the trial judge faxed a draft ruling to the parties. In his ruling, the trial judge stated:

The Court finds that the following language is dispositive: ... "(ii) all revenues, increases, *and income from such separate property and from their respective personal* efforts will be separate property," ... It appears that the clear meaning of these clauses says: ... income ... from their respective personal efforts ... is to continue to be their separate property after marriage. Supporting this position is the testimony that there was never a joint account, that the parties put their salaries, wages, etc. into accounts only held by the person earning those wages, salaries, etc.

(emphasis in original). The trial court ultimately ruled that the "salaries, wages, and other income of each party remained that person's separate property." Several weeks later, the trial court issued its order on Mona's petition for declaratory judgment, which incorporated the terms of the draft ruling and decreed that, pursuant to the language of the premarital agreement, "no community property was acquired by either party as a result of their respective salaries, wages, and other income earned during the marriage."

Finally, on June 6, 2005, the trial court issued its final decree of divorce. The

which they stipulated that the premarital agreement was valid and enforceable. Accordingly, the validity of the premarital agreement is not at issue.

decree incorporated the trial court's declaratory judgment order and, based on the findings reflected in that order, declared that no community property existed in the marital estate. At Mona's request, the trial court thereafter issued findings of fact and conclusions of law. Among other things, the trial court found that the premarital agreement was "inclusive of salaries, wages, and other income of each party and as such salaries, wages, and other income remain the separate property of the respective party earning such." The trial court also found that "no community property [was] accumulated during the course of the marriage." Based on the terms of the premarital agreement, the trial court entered a conclusion of law that "no community property existed to be divided by the Court." This appeal followed.

### Issue on Appeal

Mona challenges the trial court's interpretation of the premarital agreement and its finding that no community property existed in the marital estate for the court to divide. Mona contends that the language of the premarital agreement is ambiguous, and that there is no evidence to support the trial court's construction of that agreement. Alternatively, she asserts that, if this Court determines that the premarital agreement is unambiguous, the trial court's finding is against the great weight and preponderance of the evidence presented at trial. She urges this Court to either (1) hold as a matter of law that the premarital agreement does not address the wages and salaries earned by the parties during marriage, and remand the case to the trial court with instructions to divide the marital estate in a manner consistent with this Court's ruling; or (2) remand the case to the trial court to hear additional evidence on the applicability of the premarital agreement to the wages and salaries of the parties earned during marriage.

For the following reasons, we agree that, as a matter of law, the premarital agreement does not address the wages and salaries earned by the parties during marriage, and therefore, they retained their status as community property. As a result, we reverse that portion of the trial court's judgment regarding the division of the marital estate and remand for further proceedings consistent with this opinion. We affirm the trial court's judgment in all other respects.

### Analysis

#### A. Standard of Review and Applicable Law.

 Generally, in Texas, courts interpret premarital agreements like other written contracts. *See, e.g. Beck v. Beck,* 814 S.W.2d 745, 748–49 (Tex.1991); *Osorno v. Osorno,* 76 S.W.3d 509, 510–11 (Tex. App.-Houston [14th Dist.] 2002, no pet.). In interpreting a written contract, the primary concern of the court is to ascertain the true intentions of the parties, as expressed in the instrument. *Lenape Res. Corp. v. Tenn. Gas Pipeline Co.,* 925 S.W.2d 565, 574 (Tex.1996). The Texas Supreme Court has admonished courts to examine and consider the entire writing in order to accomplish this objective. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). This is so that the court can "harmonize and give effect to all the provisions of the contract, so that none will be rendered meaningless." *Id.* No single provision, considered alone, is to be given controlling effect; instead, all contractual provisions must be considered with reference to the whole instrument. *Id.* All language should be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 101 (Tex.1999).

One important distinction does exist between the construction of premarital agreements and normal contracts. Premarital property agreements we construe narrowly in favor of the community estate. *Fischer–Stoker v. Stoker*, 174 S.W.3d 272, 278–79 (Tex.App.–Houston [1st Dist.] 2005, pet. denied); *McClary v. Thompson*, 65 S.W.3d 829, 837 (Tex.App.-Fort Worth 2002, pet. denied).

As a preliminary matter, Mona contends that the premarital agreement is ambiguous, and argues that the testimony presented at trial supports her construction of the premarital agreement. Conversely, B.J. contends that the premarital agreement is unambiguous, and asserts that the agreement has a "clear meaning," as was determined by the trial court. We agree with B.J. that the premarital agreement is not ambiguous and that it has a clear meaning. However, we disagree with B.J.'s interpretation of that agreement.

**B. The Premarital Agreement Is Not Ambiguous.**

**1. Applicable Law.**

Whether a contract is ambiguous is a question of law for the court. *Id.* at 394; *Kurtz v. Kurtz*, 158 S.W.3d 12, 18 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will interpret the contract as a matter of law. *Coker*, 650 S.W.2d at 394. In this situation, the contract will be enforced as written, and parol evidence will not be admitted for the purpose of creating an ambiguity or to give the contract a meaning

different from that which its language imports. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951).

If, however, the meaning of a contract is uncertain and doubtful, or reasonably susceptible to more than one meaning, the contract is ambiguous, and its meaning must be resolved by the factfinder. *Lenape Res. Corp.*, 925 S.W.2d at 574. In this situation, the factfinder may look to parol evidence to determine the parties' intent. *Id.* But, the ambiguity must become evident when the contract is read in the context of the surrounding circumstances, and not after parol evidence of intent is admitted to create an ambiguity. *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 521 (Tex.1995). Moreover, the fact that the parties put forth conflicting interpretations does not create an ambiguity. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996).

**2. The Premarital Agreement is Not Reasonably Susceptible to More Than One Interpretation.**

When considered in its entirety, the premarital agreement is not reasonably susceptible to more than one interpretation. Nor is its meaning uncertain or doubtful. The agreement clearly expresses the parties' intent to (1) retain the separate property character of the parties' already-existing separate property, as of the date of the marriage; and (2) convert all revenues, increases, and income acquired from the parties' separate property during marriage to separate property.[2] This intent is evi-

---

2. Under the Texas Family Code, community property consists of property other than separate property that is acquired by either spouse during the marriage. Tex. Fam.Code § 3.002. The salaries and wages earned by the parties during marriage are community property. *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex.App.-Houston [14th Dist.] 1992, writ denied). In addition, when separate property produces income, and that income is acquired

dent in the initial paragraph of the section entitled "Purpose":

> It is the general intention of the parties that the separate character of the properties of each will be *preserved* after the marriage ... and it is their general intent that from a property standpoint their respective rights as they exist at the date of the marriage and as they may exist thereafter will continue with like effect without change of the character of the property. . . .

(emphasis added). This provision conveys the parties' general intent to retain the separate property character of the parties' already-existing separate property. The use of the term "preserved," in reference to the character of the parties' separate property, clearly refers only to that separate property in existence as of the date of the parties' marriage. *See McClary*, 65 S.W.3d at 838 (concluding that the parties' use of the term "remain," in reference to retirement benefits identified in the parties' premarital agreement, clearly referred only to those benefits that were separate property at the time the premarital agreement was executed).

The parties' focus in their agreement on already-existing separate property is further demonstrated in the second paragraph of the section entitled "Purpose":

> Without in any manner limiting the remaining provisions of this agreement, it is, therefore, the parties' general purpose, intent and agreement that (i) *each will continue to own and to manage his or her separate property, respectively,* (ii) all revenues, increases and income from *such separate property* and from their respective personal efforts will be separate property, *subject to the sole management and control by the party*

*whose separate property generated such revenues, increases, property, or income,* (iii) the separate estate of each party, respectively, will bear all of such party's obligations and liabilities presently existing or hereafter undertaken or arising, (iv) their respective separate property and all increases in value, mutations, additions and income therefrom will *remain* the separate property of the party owning same at the time of the marriage. . . .

(emphasis added). This provision, particularly the italicized text, clearly shows that the parties were concerned solely with the separate property in existence as of the date of the parties' marriage and "all revenues, increases, and income" acquired therefrom during marriage.

First, as with the term "preserved," the use of the term "continue," in reference to the parties' separate property, clearly refers only to that separate property in existence at the time of the parties' marriage. *See id.* Second, the reference in subpart (ii) to "such separate property" clearly refers only to that separate property. While this subpart does serve to convert to separate property the "revenues, increases, and income" acquired from the parties' already-existing separate property during the marriage, and from the parties' "personal efforts" with respect to that separate property, it does not, as B.J. contends, serve to convert all wages and salaries earned by the parties during marriage to separate property. This is evident by the limitation included in the last clause of subpart (ii), "subject to the sole management and control by the party whose separate property generated such revenues, increases, property, or income." This

by a spouse during marriage, it is community property. *McClary*, 65 S.W.3d at 834. The parties sought to avoid the latter through

Paragraph 1.1(ii) of the premarital agreement.

clause, omitted from the trial court's declaratory judgment order, clearly indicates that the term "respective personal efforts" is to be considered only in conjunction with the parties' already-existing separate property, and limits the scope of the premarital agreement to the separate property generating "such revenues, increases, property, or income." It cannot reasonably be construed to address all wages and salaries earned by the parties during marriage.

Finally, Paragraph 2.1 demonstrates the parties' intent with respect to separate property acquired after marriage:

[I]n addition, *all properties which are hereafter acquired by each of the parties, respectively, by gift, devise, or descent, or by purchase with or exchange for separate property of by purchase with obligations binding only on the separate property of such party, shall be and remain the separate property of each party.* Increases in separate property (whether by reason of personal services, or otherwise), shall be the separate property of the spouse who owned the separate property. *In addition, all revenues, property, and income from the separate property of each party ("Special Income") shall be the separate property of the party owning such separate property and become subject to the sole management and control of such party* . . . .

(emphasis added). The terms "hereafter acquired" clearly refer to separate property acquired by the parties after marriage, and the final clause signifies the parties' intent to convert all revenues, property, and income acquired from the separate property of each party during marriage to separate property.

■ Thus, when considered in its entirety, the premarital agreement clearly evinces the parties' intent to retain the separate property character of the parties' already-existing separate property, as of the date of the marriage, and to convert all revenues, increases, and income acquired from the parties' separate property during marriage to separate property. Nowhere does it purport to convert all wages and salaries earned by the parties during marriage to separate property. As such, B.J.'s proffered interpretation of the effect of the premarital agreement is both untenable and unreasonable. Accordingly, the premarital agreement is not reasonably susceptible to more than one interpretation. Nor is its meaning uncertain or doubtful. Therefore, the premarital agreement is not ambiguous.[3] *See Lenape Res. Corp.,* 925 S.W.2d at 574.

### 3. *McClary* and *Dewey* Support This Result.

Furthermore, two Texas courts of appeals decisions are instructive as to the outcome of this appeal. *See McClary,* 65 S.W.3d at 838–39; *Dewey v. Dewey,* 745 S.W.2d 514, 517 (Tex.App.-Corpus Christi 1988, writ denied). In those cases, the parties executed premarital agreements

3. Our conclusion that the premarital agreement is not ambiguous is further supported by the testimony of attorney Linda Jackson regarding the circumstances surrounding the drafting of the premarital agreement. Jackson testified that she deleted a paragraph regarding the parties' salaries and compensation from employment from the prior draft of the premarital agreement. This testimony supports our conclusion that the parties did not intend the premarital agreement to address the wages and salaries earned by the parties during marriage. Because the testimony explains the circumstances surrounding the drafting of the agreement, and does not otherwise vary or contradict the meaning of the premarital agreement, it is proper evidence to be considered by the Court in our determination of whether the agreement is ambiguous. *See Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 731–32 (Tex.1981).

whose provisions did not expressly mention the parties' salaries, earnings, income, or employment benefits earned or acquired during marriage. *See McClary*, 65 S.W.3d at 838; *Dewey*, 745 S.W.2d at 517. Nor did the premarital agreements explicitly exclude the creation of community property or the accumulation of a community estate. *See McClary*, 65 S.W.3d at 838; *Dewey*, 745 S.W.2d at 517. In both cases, the appellants contended that the premarital agreements operated to convert the salaries, income, and retirement benefits earned or acquired by the parties during marriage to separate property. *See McClary*, 65 S.W.3d at 838 (salaries and income); *Dewey*, 745 S.W.2d at 517 (retirement benefits). And, in both cases, the court held that, since the premarital agreements did not expressly mention the parties' salaries earned during marriage, the premarital agreements were not ambiguous, and their plain language did not alter the character of the salaries, income, or retirement benefits earned or acquired by the parties during marriage. *See McClary*, 65 S.W.3d at 838–39; *Dewey*, 745 S.W.2d at 517.

As with *McClary* and *Dewey*, here the plain language of the premarital agreement makes no mention of salary, earnings, income, or employment benefits earned or acquired by the parties during marriage. Moreover, no portion of the agreement provides that the wages and salaries earned by the parties during marriage will become separate property. Accordingly, the premarital agreement is not ambiguous, and its plain language does not affect the character of the wages and salaries earned by the parties during marriage. *See McClary*, 65 S.W.3d at 838–39; *Dewey*, 745 S.W.2d at 517.

### 4. *Bradley* is Distinguishable.

B.J. relies upon *Bradley v. Bradley*, 725 S.W.2d 503 (Tex.App.-Corpus Christi 1987,

no writ) in support of his proffered interpretation of the premarital agreement. In that case, the parties executed a premarital agreement with a provision almost identical to one at issue in the present case. *See id.* at 504. That provision contained the following language:

> (b) that all revenues, increases, and income from such separate property, and from their respective personal efforts will be subject to the sole management and control of the party whose separate property *or personal efforts* generated such revenues or income....

*Id.* (emphasis added). However, another provision in the parties' premarital agreement required the parties to enter into an annual partition and exchange agreement in order to convert the income from the parties' personal efforts to separate property. *Id.* Because the parties failed to complete this annual partition and exchange, the court held that the income generated from the parties' personal efforts remained community property. *Id.* However, as B.J. notes, the court stated that the language of the premarital agreement evinced the parties' intent to "effect a partition and exchange of the parties' respective community interests in each other's personal earnings," and "contemplate[d] a partition and exchange of community property interests in the future." *Id.* B.J. contends that, had the parties completed the requisite annual partition and exchange, the court in *Bradley* would have held that income from the parties' "personal efforts" remained their separate property. B.J. urges this Court to hold that the language, "income from their respective personal efforts," includes wage and salary income, as he presumes the court in *Bradley* would have held.

Without deciding whether we agree with *Bradley*, we find *Bradley* distinguishable. There, the premarital agreement included

the phrase "or personal efforts," which strengthened the husband's argument that personal efforts referred to salaries and wages. *See id.* at 504. Below is the section both agreements have in common, with the extra phrases from each marked:

all revenues, increases, and income from such separate property and from their respective personal efforts will be [*separate property,* (Mona and B.J.'s agreement)] subject to the sole management and control of the party whose separate property [*or personal efforts* (Bradley agreement)] generated such revenues[, *increases, property,* (Mona and B.J.'s agreement)] or income....

The *Bradley* agreement, even though it does not directly refer to salaries or wages, more strongly implies an intent to equate personal efforts with wages and salaries than does Mona and B.J.'s agreement.

As a result, we find *Bradley* distinguishable and we decline to follow it.

**C. As a Matter of Law, the Premarital Agreement Does Not Address the Wages and Salaries Earned by the Parties During Marriage.**

 Because the premarital agreement is not ambiguous, we may construe the agreement as a matter of law. *Coker,* 650 S.W.2d at 394; *see also Willis v. Donnelly,* 199 S.W.3d 262, 275 (Tex.2006) ("The construction of an unambiguous written contract is a question of law for the court."). As a matter of law, the premarital agreement does not address the wages and salaries earned by the parties during marriage. *See McClary,* 65 S.W.3d at 838–39; *Dewey,* 745 S.W.2d at 517. Consequently, the wages and salaries earned by the parties during marriage are community property, and the trial court erred in finding that there was no community property to be divided by the court in

the divorce proceeding. *See* TEX. FAM. CODE' 3.002; *Bell,* 832 S.W.2d at 752.

 Furthermore, because the trial court erred in characterizing the sole asset of the community estate, we must remand to the trial court for a determination of the community estate and a just and right division of the parties' community property. *Evans v. Evans,* 14 S.W.3d 343, 347 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (citing *In re Marriage of Taylor,* 992 S.W.2d 616, 621 (Tex.App.-Texarkana 1999, no pet.)) (holding that when the trial court mistakenly characterizes property that constitutes the main asset of the community estate, the error is of such a magnitude that it materially affects the just and right division of the community estate, and the appellate court must remand the entire community estate for a just and right division); *see also Bradley,* 725 S.W.2d at 505.

The Dissent notes that Mona failed to challenge the property division as not being just and right, and asserts that Mona failed to cite record evidence of (1) the amount of any funds of any kind that remained in either spouse's possession at the time of divorce; and (2) the extent to which any such funds included salary or wages earned by either spouse during the marriage. The Dissent concludes that, "By addressing the merits of the community property characterization of wages without any indication in our record that any such wages exist or their amount, the Majority is issuing an advisory opinion for which we have no jurisdiction." However, the trial court had no occasion to consider whether and in what amounts any such funds existed at the time of trial, as the trial court expressly ruled in the declaratory judgment action Mona filed that, pursuant to the terms of the premarital agreement, no community property existed to be divided by the court. When the trial court

decided in the declaratory judgment action that there was no community property for the court to divide, the parties would not need to attempt to demonstrate the existence and amount of any such funds. Given our resolution of this appeal, this is a matter to be resolved upon remand to the trial court.

## Conclusion

Because the trial court erred in its interpretation of the premarital agreement, we reverse that portion of the trial court's judgment regarding the division of the marital estate and remand for further proceedings in accordance with this opinion, including a determination of the community estate and a just and right division of the parties' community property. We affirm the trial court's judgment in all other respects.

EDELMAN, J., dissenting.

RICHARD H. EDELMAN, Senior Justice, dissenting (Assigned).

In a divorce decree, the trial court divides the community property of the parties in a manner that the court deems just and right. Tex. Fam.Code Ann. § 7.001 (Vernon 2006). Such a property division need not be equal and may take into consideration many factors, such as the spouses' respective abilities, benefits that the party not at fault would have derived from a continuation of the marriage, business opportunities, education, relative physical condition, relative financial condition and obligations, disparity in age, size of separate estates, the nature of the property, and disparity in income and earning capacity. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex.1981).

An appeals court reviews a trial court's division of marital property only for an abuse of discretion. *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex.1976). An abuse of discretion occurs where the division of community property is manifestly unfair. *See Mann v. Mann*, 607 S.W.2d 243, 245 (Tex.1980). This is true whether the abuse of discretion occurs in characterizing the property as community or separate or in dividing it. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985). Therefore, a mischaracterization of community property as separate property must have a material effect on the property division in order to be reversible error.[1] Moreover, it is the appellant's burden to demonstrate such an effect.[2]

In this case, Mona does not challenge the property division as not being a just and right division, nor has she cited any evidence in the record of the amount of any funds of any kind that remained in either spouse's possession at the time of divorce, let alone the extent to which any such funds included salary or wages earned by either spouse during the marriage.[3] Without a showing of such amounts, and in the context of the other

---

1. *See McElwee v. McElwee*, 911 S.W.2d 182, 189 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *Magill v. Magill*, 816 S.W.2d 530, 533 (Tex.App.-Houston [1st Dist.] 1991, writ denied); *Mundy v. Mundy*, 653 S.W.2d 954, 957 (Tex.App.-Dallas 1983, no writ); *see also Jacobs*, 687 S.W.2d at 733; Tex.R.App. P. 44.1(a)(1).

2. *See Magill*, 816 S.W.2d at 533; Tex.R.App. P. 38.1(h).

3. *See* Tex. Fam.Code Ann. § 3.001(1), (2) (Vernon 2006) (stating that a spouse's separate property includes the property owned by that spouse before marriage); *id.* § 3.002 (stating that community property consists of the property, other than separate property, acquired by either spouse during marriage); *id.* § 3.003(a) (stating that property possessed by either spouse during or on dissolution of marriage is presumed to be community property).

factors that the trial court could have taken into account in making a property division, Mona has provided us no basis to conclude that the trial court's division (or non-division) of property was not just and right, even if the trial court incorrectly interpreted the agreement.[4]

The Majority Opinion holds that a mischaracterization of the sole or main asset of the community property automatically requires a reversal of the property division. On the contrary, even if the record in this case reflected that funds actually existed that had been mischaracterized, it would still have been necessary for Mona to establish that an assignment of all of those funds to Billy was manifestly unfair in light of their amount and the other relevant circumstances. By addressing the merits of the community property characterization of wages without any indication in our record that any such wages exist or their amount, the Majority is issuing an advisory opinion for which we have no jurisdiction. Because Mona's sole issue fails to demonstrate that any wages even existed that could have been subject to a community property division, it cannot establish that the trial court's division of property was not just and right. Mona's issue should therefore be overruled, and the judgment of the trial court affirmed.

4. *See Mundy,* 653 S.W.2d at 957 (holding that there was no need to determine if a mischaracterization of community property had occurred because the record did not reflect the values allotted to the properties to enable the court to determine whether the division of property was manifestly unjust in any event). Similarly, by failing to present evidence of the amount of community salary funds she claims, Mona has waived recovery under this theory. *See Harris v. Harris,* 765 S.W.2d 798, 805 (Tex.App.-Houston [14th Dist.] 1989, writ denied).