

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00135-CV
_____

IN THE ESTATE OF JAMES A. LOFTIS, JR., DECEASED

On Appeal from the County Court at Law No. 1
Ellis County, Texas
Trial Court No. 13-E-2041-CV, Honorable Jim Chapman, Presiding

October 23, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

John Steven Loftis, in his capacity as independent executor of the estate of his father James A. Loftis, Jr., appeals the trial court's declaratory judgment in favor of appellee Rosemary Galloway Loftis. We will reverse the trial court's judgment in part and otherwise affirm it.

Background

Before their marriage in December 2005, James A. Loftis, Jr. and Rosemary (then Galloway) signed a premarital agreement (PMA).[1] After they married, Jim and

_____

[1] The premarital agreement referred to the couple as "Jim" and "Rosemary." In appellant's brief, he uses the same references for simplicity, and refers to himself as "John." Hereafter, we will refer to those individuals by those given names.

Rosemary signed an agreement ratifying the PMA.  Pertinent to this appeal, the PMA included the following provisions:

## Stipulations
****

2.      The parties are entering into this agreement in accordance with article XVI, section 15, of the Texas Constitution, as amended, and relevant sections of the Texas Family Code, altering by agreement what their marital property rights would be in certain property on and during their marriage and determining, in part, the claims each may lawfully assert against the other party and his or her estate, if and when the marriage is dissolved by judicial act or death.

****

## Article 2

## Property of the Parties

### 2.2 Separate Property of Jim

Rosemary expressly disclaims any express or tacit understanding or agreement that she has acquired or may in the future acquire any rights in Jim's property or income, including all interest or rights in any nonvested property rights.  All property listed in Schedule A of this agreement is stipulated and agreed to be the sole and separate property of Jim and will remain the separate property of Jim.  All mutations, changes, and increases of the properties owned by Jim at the time of the parties' marriage, including without limitation the properties listed in Schedule A, will be and remain the separate property of Jim.  All of those properties then existing must be set aside to Jim in the event of a court-ordered declaration of voidness of marriage, annulment, or divorce, or set aside to his estate in the event of his death.

****

### 2.5 No Community Estate Will Arise

The parties specifically understand and agree that no community estate will arise or be created during their marriage.  Therefore the parties agree that all earnings of each party, together with all income received, including but not limited to interest and dividend income, bonuses, director's compensation, commissions, wages or salary received for services rendered, profits, distributions, revenues, royalties, stock, stock options, warrants, and other compensation and benefits of any type earned or received by that party, and any income and property derived from the reinvestment of such income, will be the separate property of the respective party.

2

****

*2.8 Management of Properties*

Each party will have the full, free, and unrestricted right to manage the separate property over which he or she has control under section 3.101 of the Texas Family Code or succeeding provisions of similar import and nature, including without limitation the right to convey or encumber the property; to dispose of it by sale, gift, or otherwise; and to deal with it without taking into consideration any rights or interests of the other party. If the joinder of either party should be required by law in connection with the execution of any document by the other party with respect to the separate property of the other party, on request and from time to time, the joining party must execute all such documents necessary to effect the desires of the other party, including gift tax returns, but without any personal liability of the joining party. Neither party will have the authority to encumber or dispose of the other party's separate property without the other party's express written consent.

****

Article 7

Dissolution of Marriage by Court Order

*7.1 Separate Property*

If either party-files any proceeding for divorce, annulment, or to declare their marriage void (a "dissolution proceeding"), each party agrees that the other party will be awarded all his or her separate property, including all property described in this agreement as being separate property.  Each party agrees to release all interests or claims he or she may have in the other party's separate property, and further agrees to execute any documents necessary to set aside and confirm to the other party his or her separate property and to release any and all claims that he or she might have in and to the other party's separate property.

*7.2 Liabilities*

In the event of a dissolution proceeding between the parties, each party agrees to be responsible for and pay all liabilities and obligations associated with his or her separate property, including all property described in this agreement as being separate property.  Each party further agrees to indemnify and hold the other party and his or her property harmless from all liabilities associated with such party's separate property.

3

*7.3 Release and Waiver*

If either party files a dissolution proceeding, neither party may request the court to divide the property of either or both parties in a manner contrary to the terms of this agreement.

Each party relinquishes, disclaims, and waives all rights, title, and interest that he or she may have to seek a division of property and liabilities in a dissolution proceeding contrary to what is provided for in this agreement.

*7.4 Division of Community Estate*

If the parties' marriage is dissolved by court order, all community property acquired during the marriage, if any, must be equally divided between the parties.

****

Article 8

Transfer of Assets to Rosemary and Provisions Regarding Dissolution of Marriage by Death

*Jim's Transfer of Assets to Rosemary and each party's acceptance of the other party's Will and Waivers to Be Signed on Death*

In further consideration of the loss by Rosemary, due to her marriage to Jim, of Postal Annuity and Veteran survivor benefits, Jim agrees and contracts with Rosemary that, at his death and by his will, he will provide that Rosemary will receive the home, and contents of the home, in which they are then living and the automobile that they are then driving, free of debt.

****

Unless designated as a named beneficiary under a written instrument, each party waives and releases to the other party, and his or her executors, administrators, or assigns, any and all rights of election given to him or her as surviving spouse, or through him or her to his or her heirs, to take against his or her last will and testament under any statutes, now or hereafter in force, in Texas or any other state or foreign nation in which the deceased party may have property at the time of his or her death.

****

4

*15.13 Titles and Captions*

Article headings, titles, and captions contained in this agreement are merely for reference and do not define, limit, extend, or describe the scope of this agreement or any provision.

After their marriage, Jim and Rosemary lived in a residence located at 217 Bluebonnet Lane in Waxahachie, Texas. It is undisputed the residence was Jim's separate property.

In 2011, Jim executed a will, created a revocable trust, and executed a warranty deed conveying the residence to the trustee. Rosemary was not a settlor of the trust, but was its initial trustee. In March 2012, Jim amended his revocable trust, removed Rosemary as trustee and appointed John trustee. The will devised Jim's estate, after payment of debts and expenses, to the trustee of the revocable trust.

Jim filed for divorce on May 17, 2012. A January 15, 2013, amendment of the divorce petition states John was Jim's "court appointed guardian." On February 1, 2013, Rosemary filed a counterclaim for divorce. Jim died on February 4, 2013, while the divorce actions remained pending.

John was appointed independent executor of his father's estate and in that capacity sued Rosemary for enforcement of Article 7 and return of the residence and other assets. Rosemary counterclaimed seeking to retain the residence and other assets.

Rosemary filed a motion for partial summary judgment which*, inter alia,* requested a declaration:

That pursuant to Article 8 of the Pre-Marital Agreement, ROSEMARY is entitled to clear title to the home and contents of the home, at 217

5

Bluebonnet Lane, Waxahachie, Texas, in which she and [Jim] were living at the time of his death, and the 2010 Lincoln Town Car automobile . . ., that she is driving, free of debt.

John responded and filed a cross-motion for summary judgment. In it he sought, *inter alia*, declarations:

That Article 7 of the Pre-Marital Agreement governs the rights of the parties.

That the house located at 217 Bluebonnet Lane, Waxahachie, Texas was transferred to the Trust on May 6, 2011 and therefore was not property owned by Mr. Loftis at the time of his death and is not subject to any of the provisions of the Pre-Marital Agreement.

In the alternative that the Court find that the that the (sic) home located at 217 Bluebonnet Lane, Waxahachie, Texas was property owned by Mr. Loftis at the time of his death, the Court should hold that said home and the and the (sic) 2010 Lincoln Town Car automobile constitute the separate property of Mr. Loftis and should be placed in the J.A. Loftis, Jr. Revocable Trust Account pursuant to Article 7 of the Pre-Marital Agreement and the Last Will and Testament of J.A. Loftis, Jr.

Before the court signed an order on the motions for partial summary judgment, the parties each filed additional motions for partial summary judgment. In her second motion Rosemary, *inter alia,* requested declarations:

That Article 8 of the Pre-Marital Agreement governs the rights of the parties in the event of the death of MR. LOFTIS or ROSEMARY.

That the marriage of MR. LOFTIS and ROSEMARY was dissolved by the death of MR. LOFTIS.

That pursuant to Article 8 of the Pre-Marital Agreement, ROSEMARY is entitled to clear title to the home and contents of the home, at 217 Bluebonnet Lane, Waxahachie, Texas, in which she and MR. LOFTIS were living at the time of his death, and the 2010 Lincoln Town Car automobile . . . that she is driving, free of debt.

In his second motion John*, inter alia,* requested declarations:

That the J.A. Loftis, Jr. Revocable Trust is unambiguous and clearly indicates Mr. Loftis's intention that (sic) home located at 217 Bluebonnet Lane, Waxahachie, Texas 75165 should be transferred to his children

6

because Mr. and Mrs. Loftis were engaged in divorce proceedings at the time of his death.

That the J.A. Loftis, Jr. Revocable Trust is the owner of the home located at 217 Bluebonnet Lane, Waxahachie, Texas 75165 and thus neither the courts nor the trustee has any power to transfer the property to anyone other than Mr. Loftis's children and thus the Court must vacate its ruling of September 20, 2013.

The trial court found Article 8 controlled and ordered John to convey the residence and an automobile to Rosemary. It denied John any relief.

## Analysis

### Issues on Appeal

John presents three issues on appeal, asserting, (1) the trial court erred in relying on Article 8 rather than Article 7 for its declarations; (2) the trial court erred in rendering summary judgment for Rosemary because the PMA allowed the parties to transfer their separate property without regard for the rights of the other and Jim did so prior to death; and (3) alternatively, the trial court erred in rendering summary judgment because, as to the disposition of the residence and the automobile, the PMA is ambiguous.

An appellate court reviews a trial court's grant of summary judgment *de novo*. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). The movant for summary judgment has the burden of showing there is no genuine issue of material fact and it is entitled to summary judgment as a matter of law. TEX. R. CIV. P. 166a(c). Reviewing a summary judgment, we take evidence favorable to the nonmovant as true, and indulge every inference and resolve every doubt in the nonmovant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985).

When parties file cross motions for summary judgment, and one motion is granted and the other denied, the appellate court reviews the summary judgment

evidence presented by both sides and determines all questions presented. *Comm'rs Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997). If the issue raised is based on undisputed and unambiguous facts, then the reviewing court may determine the question presented as a matter of law. *Gramercy Ins. Co. v. MRD Invs., Inc.,* 47 S.W.3d 721, 724 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Courts interpret premarital agreements like other written contracts. *Williams v. Williams,* 246 S.W.3d 207, 210 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *McClary v. Thompson,* 65 S.W.3d 829, 837 (Tex. App.—Fort Worth 2002, pet. denied). In construing a contract a court's primary concern is determining the parties' true intent. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 333 (Tex. 2011). Accordingly the court "'must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *Id.* (quoting *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex. 2003)). Contract terms are given their plain and ordinary meaning unless the instrument indicates the parties intended a different meaning. *Reeder v. Wood Cnty. Energy, LLC,* 395 S.W.3d 789, 794-95 (Tex. 2012). Understanding the parties' intent requires a court examine the entire agreement in light of the circumstances present at the time when the parties entered into the agreement. *Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.,* 352 S.W.3d 445, 450-51 (Tex. 2011). No single provision taken alone should control—instead, we must consider all provisions with reference to the entire agreement. *J.M. Davidson,* 128 S.W.3d at 229.

Issue One – Article 7 vs. Article 8

By John's issue one, he challenges the trial court's declaration that article 8 of the PMA, rather than its article 7, governs the rights of the parties under the undisputed facts presented in the summary judgment record. The facts are that Jim filed a divorce petition in May 2012, Rosemary filed a counter-petition also seeking divorce in February 2013 and Jim died later that month while the petitions were pending.

Article 7 of the PMA addresses the consequences of a divorce; article 8, those of the dissolution of the marriage by death. Because the marriage had not been dissolved when Jim died, Rosemary asserts article 8 governs. Because the parties had filed divorce petitions, John contends article 7 governs.

John's argument begins by emphasizing the clause appearing in section 7.1, and again in section 7.3, indicating the stated consequences flow if "either party files" a proceeding to dissolve the marriage, and language of section 7.2, which begins, "[i]n the event of a dissolution proceeding . . . ." This wording, John contends, indicates the event that triggers the obligations the parties undertook in article 7 is the filing of a divorce petition by either party. But the focus of John's argument is the second sentence of section 7.1, which states "[e]ach party agrees to release all interests or claims he or she may have in the other party's separate property," and states each party further agrees to execute documents necessary for that purpose. John contends that each party thereby undertook the obligation to release claims to the separate property of the other party, and that under the unambiguous language of article 7, the obligation was triggered when Jim filed his divorce petition. It is, in John's view, an independent obligation, binding on Rosemary without regard to any action of the divorce court.

9

Rosemary contends article 7 unambiguously applies only if the marriage is dissolved by court order.

John responds that Rosemary's reading of the second sentence of section 7.1, which would suggest the agreed-upon release would follow or occur in conjunction with a divorce decree, renders the sentence redundant and meaningless. He points out the PMA and its property schedules defined the parties' separate property and the divorce court would constitutionally be prohibited from divesting a party of separate property.

We do not agree that the second sentence of section 7.1 carries the meaning John attributes to it when article 7 is considered in its entirety. As noted, article 7 contains three references to the filing of a dissolution proceeding. In two of them, the sentence makes clear it is referring to the action of the divorce court. The first sentence of section 7.1 states that in such an event, "each party agrees that the other party *will be awarded* all his or her separate property . . . ."[2] Similarly, the first sentence of section 7.3 provides that neither party "may request the court to divide the property" in a manner contrary to the PMA's terms. Section 7.3 goes on to provide that each party waives any right "to seek a division of property and liabilities in a dissolution proceeding contrary" to the agreement.

And section 7.4, addressing division of any community property, reads, "If the parties' marriage is dissolved by court order," any community property must be divided equally. John argues this language shows the parties knew how to require action by court order and the absence of such language in the second sentence of section 7.1 supports his reading it became effective when a divorce petition was filed. We agree

_____

[2] Italics ours.

we must "strive to give effect to every provision" of the PMA, *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983), but we do not agree that precept requires us to accept John's reading. John argues "Rosemary's interpretation ignores the plain language providing for release upon the filing of a divorce proceeding." But section 7.1 does not, by its plain language, provide for release upon the filing. As we have noted, the first sentence refers to the filing of a proceeding, and continues with language making clear the sentence as a whole deals with the divorce court's *award* of property. Harmonizing the first and second sentences of 7.1, the agreed-upon release of interests in the other's separate property may well be seen as accompanying or following a divorce court order. We do not find persuasive John's contention the release necessarily would be redundant of the parties' constitutional entitlement to retain their separate property on divorce. The Family Code does not contain a general requirement that a court confirm separate property in a divorce decree[3] and not every decree does so.[4] And, in any event, the repeated references in article 7 to actions of the parties and the court satisfy us that the parties intended it to govern the consequences of the dissolution of their marriage by court order.[5]

---

[3] *See* TEX. FAM. CODE ANN. § 7.002(c) (West 2006) (requiring divorce court to confirm ownership as separate property of income and earnings subject to partition or exchange agreement).

[4] *See, e.g., Walton v. Johnson*, 879 S.W.2d 942, 944 (Tex.App.—Tyler 1994 writ denied) (post-divorce litigation over ownership of property); 2.1 TEXAS FAMILY LAW: PRACTICE AND PROCEDURE F1.18[2] (LexisNexis Matthew Bender 2015) ("It is generally considered advisable for the decree to confirm as separate property all significant property that is separately owned by each spouse").

[5] Additional support for the trial court's reading of article 7 can be found in the PMA's section 2.2, entitled "*Separate Property of Jim,*" the last sentence of which reads, "All of those properties then existing must be set aside to Jim in the event of a court-

It is undisputed the parties' marriage was dissolved by Jim's death, not by a court. The trial court did not err in its conclusion that, under the PMA's unambiguous terms, article 8 of the PMA controls, not article 7. We will overrule John's first issue.

Issue Two – Conveyance of Residence to Trustee

John's second issue addresses the consequences of Jim's 2012 deed conveying the Waxahachie residence to the trustee of his revocable trust.

The trial court's summary judgment recites that the PMA is unambiguous, that its Article 8 governs the rights of the parties in the event of the death of Jim or Rosemary, finds that their marriage was dissolved by Jim's death, and finds that, pursuant to Article 8, Rosemary is entitled to "clear title to the home . . . at 217 Bluebonnet Lane, Waxahachie, Texas, in which [they] were living at the time of his death . . . ." The summary judgment goes on to find that Rosemary is entitled to judgment against John, both in his capacity as independent executor and in his capacity as trustee, "commanding him to deliver clear title[s] to the house . . . ."

John argues his father's conveyance of the residence to the trustee was expressly authorized by section 2.8 of the PMA. That section permitted each of the parties to manage that party's separate property, including without limitation, the power to convey separate property "without taking into consideration any rights or interests of the other party." John seems to argue that section 2.8 unambiguously permitted a party to convey separate property without regard to, or even contrary to, a commitment contained elsewhere in the PMA. We cannot agree. Such a position ignores the

ordered declaration of voidness of marriage, annulment, or divorce, or set aside to his estate in the event of his death."

12

requirement that courts consider the entirety of an agreement, attempting to harmonize and give effect to all its provisions so none are rendered meaningless. *See Italian Cowboy Partners,* 341 S.W.3d at 333.

That said, we agree in part with another of John's contentions made in support of his second issue. As John's brief points out, Rosemary sought declaratory and other relief against him in both his fiduciary capacities.[6] His brief also argues that Rosemary contended in the trial court Jim could not avoid the obligation he undertook in the PMA to leave the residence to her merely by conveying it to a trustee. John goes on to argue that Rosemary nevertheless did not assert "a legal claim challenging Jim's transfer to the trust or seeking to void it." Rosemary's pleadings assert a number of causes of action against John, individually and in both fiduciary capacities, and against John's brother James A. Loftis III, individually. For our purpose in this opinion, we need not address the question whether any of those causes of action could support a remedy requiring John as trustee to convey the residence to Rosemary. What we do say is that the summary judgment record does not demonstrate as a matter of law that Rosemary is entitled to such a remedy. To that degree only, we will sustain John's issue two.

Issue Three - Ambiguity

By his third issue, John presents an alternative argument contending that if Rosemary's position on the meaning of article 7 is reasonable, the PMA is ambiguous because, he argues, his reading of article 7 is unquestionably reasonable. *See Italian Cowboy Partners,* 341 S.W.3d at 333 (contract subject to two or more reasonable

_____

[6] After the trial court granted Rosemary partial summary judgment, "[a]ll claims, defenses, and issues" regarding the Waxahachie residence were severed from the remaining issues in the litigation.

13

interpretations after applying pertinent rules of construction is ambiguous). Our conclusion, expressed in our discussion of John's first issue, that the trial court did not err by granting summary judgment to Rosemary on the application of article 8 over article 7, requires that we overrule John's third issue. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, No. 13-0597, 2015 Tex. LEXIS 558, at *22 (Tex. June 12, 2015) (summary judgment not proper vehicle to resolve disputes about ambiguous contract).

## Conclusion

We overrule John's issues one and three. We sustain his issue two in part and reverse that part of the trial court's February 5, 2014 "partial summary judgment nunc pro tunc" that finds Rosemary is entitled to judgment against John, in his capacity as trustee, "commanding him to deliver clear title[s] to the house," and that orders John, in his capacity as trustee, to deliver a deed to the Waxahachie residence to Rosemary. In all other respects, the February 5, 2014 "partial summary judgment nunc pro tunc" is affirmed. We remand the case to the trial court for further proceedings.

James T. Campbell
Justice