**Affirmed and Memorandum Opinion filed July 16, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00151-CV

### IRMA LOPEZ, Appellant

### V.

### ARTURO RABAGO, Appellee

**On Appeal from the 306th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 20FD0959**

## MEMORANDUM OPINION

Irma Lopez appeals the final decree of divorce dissolving her marriage to Arturo Rabago. In four issues, Lopez contends that the trial court abused its discretion in (1) dividing the community estate equally between the parties, despite allegations of fraud on the community and the existence of reimbursement claims; (2) entering orders relating to the terms of sale and interim management of the community property real estate that unjustly favored Rabago and are unenforceable; (3) confirming a one-half interest in certain property as Rabago's

separate property; and (4) ordering Lopez to deliver documents to Rabago that are reportedly not be in her possession. We affirm.

## *Background*

Lopez and Rabago were married on November 1, 2007. Although no children were born of this marriage, both parties had children from prior relationships. Each party owned real property at the time of their wedding, and they acquired several properties together during the marriage. Rabago granted a gift deed to a one-half interest in one of his separate properties ("Bayou Shore") to Lopez during the marriage. Lopez's separate property was sold to her brother during the marriage to retire a community debt. In the petition and counter-petition for divorce, the parties each raised fraud claims and asserted claims for reimbursement and waste. These claims will be discussed in more detail below.

In its final decree, the trial court recognized certain property interests as separate property. Specifically, the court recognized Rabago's separate property as including real property on Fannin, Avenue M ½, and Highway 6. The court further recognized that each party had a one-half separate property interest in the real property on Bayou Shore. Each party was also recognized as having a separate property interest in the funds in their own retirement account that accrued prior to the marriage.

The parties' community property included real property on Harris Way and 23rd Street, as well as an interest in a Missouri timeshare. The parties also owned several vehicles. The court ordered the community property real estate sold, with each party receiving half of the proceeds. The court awarded Lopez three vehicles and Rabago two vehicles. The court also entered detailed procedures for the sale of the community property real estate and directed Rabago to manage the properties in the interim, collect rent, maintain the properties, pay mortgages and taxes, and

2

account for all income and expenditures. The court awarded each party the furniture, personal items, and cash in their possession and all funds held in accounts in their name.

Lastly, the court ordered Lopez to turn over Rabago's passport and naturalization documents as well as the naturalization documents of Rabago's father, which Lopez testified she had in her possession. The trial court did not explicitly mention either party's fraud, reimbursement, or waste claims in the final decree. No party requested, and the trial court did not file, findings of fact or conclusions of law.

## I. Fraud, Reimbursement, and Waste

As stated, in her first issue, Lopez contends that the trial court abused its discretion in dividing the community estate equally between the parties despite allegations of fraud on the community and the existence of reimbursement claims. Lopez insists the trial court should have instead awarded her a disproportionate share of the community estate. We will begin by setting forth the general law governing our analysis of this issue before turning to the fraud allegations and then the claims for reimbursement.

### A. Governing Law

In a divorce decree, the trial court shall order a division of the parties' community estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code § 7.001; *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). Trial courts have wide discretion in determining a just and right division. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). When circumstances justify, this standard may result in a disproportionate division of assets and liabilities. *Id.* at

3

589–90. Indeed, the property division need not be equal; however, it must be equitable, and there must be some reasonable basis for an unequal division of the property. *E.g.*, *Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981); *Boothe v. Boothe*, 681 S.W.3d 916, 923 (Tex. App.—Houston [14th Dist.] 2023, no pet.).

Claims for waste, fraudulent transfer of community property, or other damage to community property belong to the community itself and also may be considered in the trial court's division. *See Chu v. Hong*, 249 S.W.3d 441, 444–45 (Tex. 2008); *see also Schlueter*, 975 S.W.2d at 589; *K.T. v. M.T.*, No. 02-14-00044-CV, 2015 WL 4910097, at *12 (Tex. App.—Fort Worth Aug. 13, 2015, no pet.) (mem. op.) ("In addition, a court may consider one spouse's wrongful dissipation of community assets.").

Reimbursement is an equitable right that arises when the funds or assets of one estate are used to benefit and enhance another estate without the first estate receiving some benefit. *Boothe*, 681 S.W.3d at 924. Waste, or constructive fraud, is one form of fraud on the community that occurs when a spouse wrongfully depletes the community estate of assets without the other spouse's knowledge or consent. *See In re Marriage of Walzel*, No. 14-16-00637-CV, 2018 WL 614767, at *3–4 (Tex. App.—Houston [14th Dist.] Jan. 30, 2018, no pet.) (mem. op.) (citing *Schlueter*, 975 S.W.2d at 589); *see also Cantu v. Cantu*, 556 S.W.3d 420, 427 (Tex. App.—Houston [14th Dist.] 2018, no pet.) ("Fraud is presumed whenever one spouse disposes of the other spouse's one-half interest in community property without that other spouse's knowledge or consent."). Waste requires disposal of community assets for non-community purposes. *Giesler v. Giesler*, No. 03-08-00734-CV, 2010 WL 2330362, at *4 (Tex. App.—Austin June 10, 2010, no pet.) (mem. op.). A spouse commits actual fraud against the other spouse's interest in the community estate when the spouse transfers community property or expends

community funds for the primary purpose of depriving the other spouse of the use and enjoyment of the assets involved in the transaction. *Boothe*, 681 S.W.3d at 924.

Legal sufficiency is a relevant factor, rather than an independent basis for reversal, in determining whether the trial court abused its discretion. *Nguyen v. Pham*, 640 S.W.3d 266, 274 (Tex. App.—Houston [14th Dist.] 2021, pet. denied). A trial court does not abuse its discretion if there is some evidence of a substantive and probative nature to support the decision. *Id*. When, as here, the trial court does not file findings of fact or conclusions of law, we imply all facts necessary to support the trial court's ruling that are supported by the evidence. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013). When examining a legal-sufficiency challenge, we review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id*. at 827. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the conclusion under review. *Id*.

### B. Fraud Allegations

As stated, Lopez first contends that the trial court abused its discretion by dividing the community estate without taking into account the fraud against the community committed by Rabago. As also mentioned above, the trial court did not make any express finding on the fraud claim. We therefore interpret Lopez's argument as asserting that she conclusively proved her fraud allegations, and the trial court therefore abused its discretion in not considering them and not awarding her a disproportionate share of the community estate.

In her brief, Lopez alleges generally that Rabago "hid community property

income" from her. More specifically, she asserts that Rabago's separate property real estate earned rental income that he did not share with her. *See generally Williams v. Williams*, 246 S.W.3d 207, 211 n.2 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("[W]hen separate property produces income, and that income is acquired by a spouse during marriage, it is community property.").

As Lopez points out, Rabago acknowledged at trial that he gave the rental income from one of the properties to his son. Rabago explained that he did so because his son ran the business at that property, which was a tire shop. Lopez additionally alleges that Rabago hid other rental income from her and did not deposit it into a joint bank account. Rabago testified regarding other rental income from other properties and acknowledged that he did not put the money into any bank account. He explained, however, that he shared the money with Lopez "many times," used it to take the two of them on trips to casinos and to Mexico, bought trucks for the two of them, and used it to go to many parties. He also noted that he paid for Lopez's mother to come live with them and even bought a house for Lopez's mother to use. The evidence therefore demonstrates that, at least to an extent, Rabago shared the rental proceeds from his separate properties with Lopez.

Additionally, despite Lopez's repeated assertions in her brief that Rabago hid the income from her, she cites no evidence that he did so. The mere fact that Rabago did not share proceeds equally with Lopez, as she alleges, does not mean that he committed fraud on the community absent evidence that he did so without her knowledge or consent or otherwise failed to account for the funds. *See, e.g.*, *Boothe*, 681 S.W.3d at 924; *Miller v. Miller*, No. 14-17-00293-CV, 2018 WL 3151241, at *6 (Tex. App.—Houston [14th Dist.] June 28, 2018, no pet.) (mem. op.); *Walzel*, 2018 WL 614767, at *3–4; *Cantu*, 556 S.W.3d at 427. Accordingly, Lopez has not established that she conclusively proved that Rabago committed

fraud against the community or that the trial court erred in not awarding her a disproportionate share of the marital estate based on the fraud allegation.

### C. Reimbursement Claims

Lopez mentions two reimbursement claims—one asserting that she used her separate property to benefit the community estate and one asserting that community property funds were used to benefit Rabago's separate estate. Regarding the former, Lopez contends that after she and Rabago bought a restaurant property, at least in part with money that they borrowed from her brother, she gave her brother a piece of her separate property real estate in exchange for cancelling the remainder of the debt. It is not entirely clear, however, what amount of community debt Lopez is asserting she eliminated by giving her brother the separate property. In his testimony, Rabago acknowledged that the transaction occurred but asserted the value to the community estate was only about $40,000. Other testimony appears to indicate that a second property owned jointly by Lopez and Rabago was also given to her brother to retire this debt.

As for the alleged use of community funds to benefit Rabago's separate property, Lopez asserts that community funds were used to pay a mortgage and taxes on Rabago's separate property and that community property rental income was used to make repairs on those properties. Lopez asserts in her brief that the total of the rental income used to make repairs was over $1 million, but the cited evidence does not support this amount or any particular dollar figure. When Lopez was asked about the amount of the reimbursement claim, she stated that she did not "have the amount." Lopez also repeatedly acknowledged during trial that she did not have receipts with her to demonstrate what bills were paid with community funds. One exhibit admitted into evidence does appear to show that Lopez made two payments for taxes due on one of Rabago's separate properties, the total

7

amount shown as paid being $2311. The source of these funds is not indicated in the exhibit, just that Lopez was the person who made the payment.

In response to this issue, Rabago points out that he, too, had a reimbursement or wasting claim against Lopez. Rabago based his claim on evidence that while Lopez had sole management rights to certain community property during the pendency of divorce proceedings, she used the rental income for personal expenses—including taking extended family on a two-week vacation to Acapulco and paying for her adult daughter's car, insurance, and college tuition—rather than paying the taxes and mortgage on the property itself or sharing the proceeds with Rabago. Although Rabago alleged his wasting claim was worth $209,000, like Lopez's reimbursement claim, the amount of Rabago's claim is not clearly established by direct evidence. It is worth noting, however, that in the final decree, the trial court ordered that past due taxes on certain property were to be paid from Lopez's share of the sale proceeds for that property.

Perhaps more importantly for our purposes, Lopez does not offer any analysis regarding how the competing reimbursement or wasting claims figure into the overall division of the marital estate. Lopez does not even mention Rabago's claim in her briefing, and she does not offer total values for the claims, the marital estate, or the portions of the marital estate each party received. She likewise does not offer record citations for these values.

Although the court did not make any explicit findings on the reimbursement or wasting claims, it may well have considered the claims in making a just and right division of property. *See Chu*, 249 S.W.3d at 444–45. Great latitude must be given to a trial court in applying equitable principles to value such claims. *See Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988); *Marriage of O'Brien*, 436 S.W.3d 78, 82 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Such claims may

8

also be offset against each other if the court determines that is appropriate. *O'Brien*, 436 S.W.3d at 82–83. In the absence of analysis or values, however, it is impossible to determine whether the trial court reached an equitable, just, and right division of the marital estate as a whole. *Id*. To prevail on a complaint about the division of property, an appellant has the burden of demonstrating based on evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *Id*. Lopez has not met her burden of demonstrating the trial court abused its discretion in the division of property in this case. *See id*. Accordingly, we overrule her first issue.

## II. Real Property Management and Division

In her second issue, Lopez contends that the trial court erred in entering orders relating to the terms of sale and interim management of the community property real estate that unjustly favored Rabago and are unenforceable. As will be discussed below, Lopez's litany of complaints under this issue are generally not supported by cogent analysis or legal authority. We decline to make Lopez's arguments for her. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); *see also Sklar v. Sklar*, 598 S.W.3d 810, 827 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (holding argument that did not include authority in support of assertion or cogent argument was inadequately briefed).

Regarding management of the properties, Lopez complains that the court's orders prevent her from having a say in property maintenance and repairs and deny her the use of income from the properties prior to sale. Instead, the court's orders required Rabago to hold the rental proceeds from each property in an account that was to be split evenly between the parties upon sale of the property. Lopez points out that she previously had management rights to the property and contends that

9

the evidence was insufficient to support a management switch. She also asserts, as above, without citing any evidence, that Rabago had previously hidden rental income from her, but she ignores the evidence that when she managed the property, she failed to pay the taxes or mortgage or share the proceeds with Rabago. The court indeed had a factual basis for switching management of the companies, and Lopez does not make any other specific argument or cite any relevant authority suggesting error in the court's orders regarding management of the properties. *See* Tex. R. App. P. 38.1(i); *Sklar*, 598 S.W.3d at 827.

Regarding the orders pertaining to the sale of the properties, Lopez asserts that the orders erroneously fail to require the parties to accept an offer to purchase at a price recommended by a real estate agent, although the orders do require that the real estate agent set the listing price for the properties. She also asserts that Rabago demonstrated at trial that he had no interest in coming to an agreement with her, although it should be noted that the citation she offers is to Rabago's testimony that he had no interest in selling his property interests to Lopez but he definitely wanted the properties sold. Lastly, Lopez contends that the trial court abused its discretion in denying her a right to first refusal on the properties. Again, however, Lopez does not offer any cogent legal analysis supporting these complaints or cite any relevant authority. *See* Tex. R. App. P. 38.1(i); *Sklar*, 598 S.W.3d at 827. Finding no merit in any of Lopez's complaints under her second issue, we overrule that issue.

### III.  Bayou Shore Property

In her third issue, Lopez contends that the trial court abused its discretion in confirming that a one-half interest in the Bayou Shore property was Rabago's separate property. It is undisputed that Rabago purchased Bayou Shore before the marriage and that during the marriage, he gifted a one-half interest in the property

to Lopez. This indicates that at the time of divorce each party had a separate property right to a one-half interest in the property, and this is exactly what the trial court confirmed in the final decree. *See generally* Tex. Fam. Code § 3.001 (explaining that separate property includes property owned by a spouse before marriage or acquired during the marriage by gift, devise, descent, or as a recovery for personal injuries sustained during the marriage); *Nguyen*, 640 S.W.3d at 271 (same).

Lopez, however, asserts that the trial court erred in recognizing Rabago had a half-interest in Bayou Shore because during trial, the judge stated at one point that she intended to award Lopez a three-quarter interest in the property, leaving Rabago with only a one-quarter interest. Lopez, however, does not offer any specific basis on which the court could have divested Rabago of one-quarter of his separate property interest in Bayou Shore. *See Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011) ("Certainly, a court cannot divest an owner of separate property."). Lopez seems to suggest at one point that the fact the parties subsequently signed a deed of trust, using the property as collateral to secure a loan, converted Rabago's separate interest in the property into a community interest yet did not do the same for Lopez's separate interest, but she does not offer any explanation or citation to the record or to authority supporting this contention. *See* Tex. R. App. P. 38.1(i).

Lopez also suggests that the trial court improperly and prematurely cut off the presentation of evidence regarding Bayou Shore, but she again does not offer any explanation or authority for this point, nor did she make an offer of proof or formal bill of exception in the trial court of what further testimony or documentary evidence she would have liked to have presented on the matter. This argument therefore was neither preserved nor properly briefed. *See* Tex. R. Civ. P. 33.1(a),

11

33.8(i); *Sklar*, 598 S.W.3d at 826 (citing *In re C.C.E.*, 530 S.W.3d 314, 322 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding party failed to preserve error regarding complaint she did not have an opportunity to present evidence where record did not demonstrate that party requested an opportunity, offered evidence that was excluded, or made an offer of proof or bill of exception)). We overrule the third issue.

## IV. Turnover of Documents

In issue four, Lopez contends that the trial court abused its discretion by ordering her to turn over certain documents to Rabago. These documents included Rabago's passport and naturalization papers and Rabago's father's naturalization papers.

Lopez first argues that the evidence was insufficient to support the trial court's determination that she had the documents in her possession. Although Lopez acknowledges that she testified at trial that she had the documents in her possession, she points out that her attorney subsequently told the court at the entry hearing that she was unable to find the documents. Normally, however, an attorney's statements must be under oath to be considered evidence, and here, Lopez's attorney's statements were clearly not based on any personal knowledge. *See, e.g.*, *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). We cannot agree that the evidence was insufficient to support the conclusion that Lopez had the documents in her possession when she expressly testified to that fact at trial and there is no contradictory evidence in the record. *See City of Keller*, 168 S.W.3d at 822, 827.

Lopez also notes that the trial court did not include the order to turn over these documents in a previous letter ruling that predated the final decree, although the letter did state an intention to award Rabago any documents in his name. Lopez

12

seems to be arguing that the trial court could not properly include anything in the final decree that was not in the court's short letter ruling, but she does not make any cogent argument or cite any legal authority supporting this position. *See* Tex. R. App. P. 38.1(i); *Sklar*, 598 S.W.3d at 827. Accordingly, we find no merit in Lopez's arguments under her third issue and overrule the issue.

We affirm the trial court's final decree.


/s/    Frances Bourliot
Justice


Panel consists of Justices Bourliot, Zimmerer, and Spain.