# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00494-CV

---

**Hassan Dandachli, Appellant**

**v.**

**Active Motorwerks, Inc. and Mario Garcia, Appellees**

---

### FROM THE 200TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-17-002153, THE HONORABLE CATHERINE MAUZY, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

This is an appeal from final judgment disposing of a suit arising from a business partnership between Hassan Dandachli and Mario Garcia. Dandachli, awarded $30,621.87 in damages and possession of certain equipment once used by the partnership, raises multiple issues on appeal. We will affirm in part, reverse in part, and remand the case.

### BACKGROUND

The facts material to the disposition of this appeal are largely undisputed. In early 2013, Dandachli and Garcia, who were both well-respected professionals in the Austin automotive industry, decided to join forces to own and operate "a high-end automotive repair shop" known as Active Motorwerks, Inc. To memorialize this decision, Dandachli drafted a Partnership Agreement requiring that each partner "provide their full-time services and best efforts on behalf of the partnership" and indicating that the partners would "each have a 50%

share of Active Motorwerks and a 50% share of net profits." The Partnership Agreement further stipulated that the partnership would "commence on February 5th, 2013[,] and [would] end only on mutual agreement between the parties involved or mutual dissolution." Although not included in the Partnership Agreement, the partners had apparently reached an understanding that Garcia would oversee the work in the garage while Dandachli would oversee front-office operations, including handling administrative matters and bookkeeping.

Dandachli was the primary financial contributor to the partnership, lending Active Motorwerks money when necessary and obtaining reimbursement when possible. In early 2015, Active Motorwerks began operating out of a facility that Dandachli owned and had remodeled, at his own expense, to suit the purpose. Later in 2015, Active Motorwerks and Dandachli executed a Lease Purchase Agreement providing that Active Motorwerks would lease certain equipment from Dandachli for a sum of $2,895 per month. When Active Motorwerks failed to make its monthly payments, Dandachli sold approximately $40,000 of the equipment in December of that year.

In March of 2017, Dandachli moved to Lebanon. Although Dandachli had assured Garcia that Dandachli could and would satisfy his obligations under the Agreement from abroad, his move strained the partnership. Garcia felt as though he had been "abandon[ed]" and "was doing more than [he] bargained for," while Dandachli was frustrated by an increasing number of customer complaints that the business was no longer operating efficiently or professionally. The two partners began negotiations for Garcia to buy out Dandachli's share of the partnership but never reached an agreement.

The dispute between the partners reached a breaking point in May of 2017. Early in the month, Dandachli learned that Garcia had moved equipment owned by Active Motorwerks

2

and Dandachli to an unknown location. On May 10, in an apparent attempt to prevent any further loss, Dandachli asked his agents in Austin to change the locks on the Dandachli-owned facility from which Active Motorwerks was operating. Dandachli then refused to allow Garcia access to the facility or to any equipment or vehicle therein. Later the same day, Dandachli attempted to redirect $22,000 in Active Motorwerks funds to his personal bank account. Garcia received notice of the attempted transfer, stopped payment, and then removed all remaining funds to an account that only he could access.

By May 15, Garcia was still without access to the Active Motorwerks facility and had eliminated Dandachli's digital access to the accounting and administrative software used to manage Active Motorwerks. Garcia then used Active Motorwerks's email account to contact over 800 current and former Active Motorwerks customers, notifying them that "technical issues" necessitated a change in the business's phone number and email address. The notice provided Garcia's cell phone number and his personal email address as the only means of contacting Active Motorwerks. Garcia also revised Active Motorwerks's social media to reflect the change.

Meanwhile, and unbeknownst to Dandachli, Garcia had made plans to operate a new automotive shop, which Garcia would ultimately register as Active Euroworks, LLC, from a facility in Pflugerville. When customers or potential customers would attempt to contact or locate Active Motorwerks, Garcia or Active Motorwerks's online materials would direct them to the Active Euroworks location. Garcia later designed a logo for Active Euroworks nearly identical to the one used by Active Motorwerks.

On May 17, at Garcia's direction, Active Motorwerks sued Dandachli for breach of contract and violations of the Texas Property Code provisions governing commercial landlord-tenant relationships. *See* Tex. Prop. Code § 93.002(c) (enumerating limited circumstances

3

allowing for lock out). Active Motorwerks also sought a temporary restraining order prohibiting Dandachli from interfering with Garcia's access to the facility. A week later, the district court issued a temporary injunction ordering Garcia to return all equipment and monies belonging to Active Motorwerks and prohibiting him from using the name "Active Motorwerks" in association with his operation of his Pflugerville automotive shop.

Dandachli filed a counterpetition on his own behalf and derivatively on behalf of Active Motorwerks, naming both Garcia and Active Euroworks as defendants. On his own behalf and against Garcia, Dandachli alleged breach of the Partnership Agreement and breach of fiduciary duty. On behalf of Active Motorwerks and against Garcia, Dandachli alleged money had and received, breach of fiduciary duty, and tortious interference with business relations. On behalf of Active Motorwerks and against both Garcia and Active Euroworks, Dandachli alleged tortious interference with contract, misappropriation of trade secrets, trademark infringement, and unfair competition. Also on behalf of Active Motorwerks, Dandachli pleaded aiding and abetting breach of fiduciary duty against Active Euroworks. As relief, Dandachli and Active Motorwerks sought damages, exemplary damages, pre- and post-judgment interest, attorney's fees and costs, and an injunction prohibiting "the further self-dealing, trade secret misappropriation, and service mark infringement by Garcia and Active Euroworks."

In response to the counterpetition, Active Motorwerks amended its petition to add Garcia as a plaintiff, to delete the claim brought under the Property Code, and to allege theories of breach of contract, breach of fiduciary duty, and unjust enrichment against Dandachli. As relief, Garcia and Active Motorwerks sought damages, pre- and post-judgment interest, attorney's fees and costs, and a declaration "that Dandachli has withdrawn as partner under the Partnership Agreement, that the Partnership Agreement is terminated, and that the assets and cash of the

4

partnership shall be used to pay all creditors, with any remaining amounts to be distributed to the partners."

The case was tried to the bench. On the first day of trial, Dandachli nonsuited the tortious interference, misappropriation, and trademark-infringement claims. After Garcia rested, the district court granted a directed verdict for Danchachli on Garcia's claim of unjust enrichment. At the end of trial, the district court then rendered final judgment finding:

- that Dandachli breached Section 2.3 of the Agreement by "failing to keep and maintain accurate records, and for [the] actions taken in May 2017";

- that Dandachli breached Section 3.1 of the Agreement "in March 2017 when Dandachli moved to Lebanon";

- that Dandachli breached his fiduciary duty to Active Motorwerks by failing to "maintain accurate records";

- that Garcia breached Section 5.2 of the Agreement "when Garcia transferred funds in the Active Motorwerks' bank account to an account controlled solely by Garcia"; and

- that Garcia breached the Agreement through his "actions taken in May 2017."

In accordance with those findings, the district court ordered:

- that Dandachli should recover from Garcia $30,621.87, an amount the district court derived from the sum of: (1) $21,732, reflecting "50% of the amounts loaned by Dandachli to Active Motorwerks, less 50% of the $5,500 owed on the Active Motorwerks credit card for which Garcia is responsible"; (2) $5,762, reflecting "50% of the $11,524 paid by Hassan Dandachli for payments on the Equipment Lease between September and December 2016"; (3) $2,750, reflecting "50% of the rent payable to Hassan Dandachli for the month of June 2017"; (4) $373.85, reflecting "50% of the balance of the Active Motorwerks bank account";[1]

- that Dandachli should recover "all remaining equipment in Mr. Dandachli's possession covered by the Equipment Lease, specifically, the five (5) Nussbaum

---

[1] Although this portion of the judgment awards $30,621.87 in damages, the delineated sums that make up that award do not appear to total $30, 621.87. The reason for this discrepancy is not clear from the record.

SPL10000MXL3s 10,0000LB 2 post lift racks with 3 stage arms, 80.5' lifting height, the Lorex Cam kit, the Ventamatic Air Fan, the Leonardo Diagnostic Tool, and all improvements to the property";

- that Dandachli should recover "the 2005 BMW 325i, 2006 BMW 325i, 2008 BMW 328i, and 1999 Toyota truck located at 808 McPhaul St., Austin Texas 78758";

- that Garcia should recover "the $747.73 remaining balance held in the bank account opened by Mario Garcia to hold funds of Active Motorwerks shall [sic] be closed";

- that Garcia should "recover the Autologic scanner, Autel scanner, the Rosstech scanner, and the Star scanner in the possession of Mr. Chris Smith, attorney for Mr. Garcia"; and

- that the parties would "take nothing on all their other claims."

Dandachli requested findings of fact and conclusions of law, which the district court issued, and then filed a combined motion for new trial and for amended findings of fact. That motion was denied by operation of law. Dandachli timely filed this appeal. Garcia, who is not represented before this Court, has not filed a brief in response to Dandachli's appeal.

## DISCUSSION

**Attorney's Fees**

In his first issue, Dandachli argues that, because he prevailed on his theory of breach of contract, the district court abused its discretion by failing to award him the attorney's fees he incurred in pursuing the claim. We agree.

Attorney's fees are recoverable only if authorized by contract or statute. *See Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013); *MBM Fin. Corp. v. The Woodlands Operating Co.*, 292 S.W.3d 660, 669 (Tex. 2009). Here, the asserted basis for recovery of fees is Subsection 38.001(8) of the Civil Practice and Remedies Code, which provides that a person "may recover reasonable attorney's fees from an individual or corporation, in addition to the

amount of a valid claim and costs, if the claim is for . . . an oral or written contract. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8). To recover fees under this provision, a party must prevail on his claim under the contract and recover damages or other meaningful relief. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 486 (Tex. 2019); *In re Nalle Plastics Fam. Ltd. P'ship*, 406 S.W.3d 168, 172–73 (Tex. 2013) (orig. proceeding); *MBM Fin.*, 292 S.W.3d at 666; *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004). In addition, the party seeking the award must provide evidence of the fees arising from the contract claim. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991); *Beard Fam. P'ship v. Commercial Indem. Ins.*, 116 S.W.3d 839, 850 (Tex. App.—Austin 2003, no pet.). If a party prevails on his contract claim, recovers damages or other meaningful relief, and provides sufficient evidence of the associated fees, an award of fees is mandatory. *See Hassell Constr. Co. v. Stature Com. Co.*, 162 S.W.3d 664, 668 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *Wallace Roofing, Inc. v. Benson*, No. 03-11-00055-CV, 2013 WL 6459757, at *13 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.). Under the circumstances presented here, we review the trial court's decision on attorney's fees for an abuse of discretion. *See Ridge Oil Co. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004) (describing discretionary review); *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (explaining that question of whether asserted statutory basis affords right to recovery is reviewed de novo).

Because Dandachli seeks an award of fees under Section 38.001(8), we must determine whether he "prevailed" on his claim of breach. The supreme court has instructed us that, for the purposes of evaluating a claim for fees under Section 38.001, "[w]hether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable." *See Ventling v. Johnson*, 466 S.W.3d 143, 154 (Tex. 2015) (citing

7

*Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 (Tex. 2009)).  In other words, a party prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties . . . ."  *See id.* (citing *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)).  In this case, breach of contract was the only one of Dandachli's counterclaims the trial court resolved in his favor.  Specifically, the court found that Garcia had breached the Agreement when he "transferred funds in the Active Motorwerks bank account" and removed equipment from Active Motorwerks' location to an unknown site.  As compensation for this breach, the trial court awarded Dandachli over $30,000 in damages, four vehicles, certain automotive equipment, and all improvements to the property.  Because Dandachli successfully litigated the claim and obtained relief from the breach, and notwithstanding the fact that Garcia prevailed on his own theory of breach, Dandachli has shown himself a "prevailing party" entitled to an award of fees under Section 38.001(8).  *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (affirming award of fees to defendant and explaining, where plaintiff and defendant had each successfully litigated theories of breach, and where both claimed attorney's fees under Section 38.001(8), that plaintiff was not entitled to fees only because it had failed to recover damages); *Besteman v. Pitcock*, 272 S.W.3d 777, 793 (Tex. App.—Texarkana 2008, no pet.) (contemplating, under Section 38.001, an award of fees to both parties); *Murrco Agency, Inc. v. Ryan*, 800 S.W.2d 600, 602 (Tex. App.—Dallas 1990, no writ) (holding, under predecessor to Section 38.001, that both parties were entitled to attorney's fees even though one party's recovery was entirely offset by opposing party's claim); *Satellite Earth Stations E., Inc. v. Davis*, 756 S.W.2d 385, 387 (Tex. App.—Eastland 1988, writ denied) (allowing recovery of attorney's fees by both parties and explaining that "attorneys' fees under the DTPA or Article 38.001 are

8

recoverable by a successful claimant regardless of whether he received a net recovery . . . the recovery of attorneys' fees by both parties should be offset").

In addition, Dandachli provided uncontroverted evidence regarding the amount of fees incurred in litigating the contract claim and counterclaim in the amount of $115,852.07. Moreover, counsel testified that he had segregated these fees from those incurred pursuing and defending against other claims which do not give rise to an award of fees. On this record, an award of fees is mandatory. *See Hassell Constr.*, 162 S.W.3d at 668. And because Dandachli has prevailed on this issue on appeal, he is also entitled to the appellate fees conditionally requested at trial. *See Ventling*, 466 S.W.3d at 155. We therefore sustain Dandachli's first subissue, reverse the court's ruling on fees, and remand for a determination of the amount of fees incurred at trial and on appeal.[2]

**Costs**

Also in his first issue, Dandachli argues that the district court abused its discretion by failing to award the $4,646.80 in costs he incurred during the litigation of the case. We disagree.

"The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." Tex. R. Civ. P. 131. However, "[t]he court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules." *Id*. R. 141. We review an award or a failure to award costs for an abuse of discretion. *See Furr's Supermarkets, Inc. v. Bethune*, 53 S.W.3d 375, 376 (Tex. 2001).

---

[2] Because Garcia has not filed a brief in this Court, we do not address his own entitlement, if any, to an award of fees.

Here, Dandachli cannot show an entitlement to costs on appeal. When "neither party was wholly successful" on the merits, "it [i]s within the trial court's discretion to order each party to bear its own costs." *Niemeyer v. Tana Oil & Gas Corp.*, 39 S.W.3d 380, 390 (Tex. App.—Austin 2001, pet. denied). In this case, Dandachli prevailed on his theory of breach of contract but did not prevail with any of his other theories. Garcia, meanwhile, prevailed with theories of breached contract and breached fiduciary duty. It was therefore within the discretion of the district court to require the parties to bear their own costs, and we overrule Dandachli's second subissue.

**Pre-judgment Interest**

In a relatively cursory argument, Dandachli contends the district court abused its discretion by declining to award pre-judgment interest. Texas recognizes two legal sources for an award of pre-judgment interest: 1) general principles of equity, and 2) an enabling statute. *See Citizens Nat'l Bank v. Allen Rae Invs., Inc*., 142 S.W.3d 459, 486–87 (Tex. App.—Fort Worth 2004, no pet.) (citing *Johnson & Higgins, Inc. v. Kenneco Energy, Inc*., 962 S.W.2d 507, 530 (Tex. 1998)). In support of his argument, Dandachli points only to *Matthews v. DeSoto*, 721 S.W.2d 286, 287 (Tex. 1986), as an authority supporting an award of pre-judgment interest. Yet Dandachli has not explained how *Matthews* or other common law precedent requires an award in this instance. *See id*.; *Cavnar v. Quality Control Parking, Inc*., 696 S.W.2d 549, 554 (Tex. 1985) , *abrogated by Johnson & Higgins*, 962 S.W.2d 507; and *holding modified by C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315 (Tex. 1994). Nor has Dandachli cited any statutory authority allowing the award of pre-judgment interest sought here. "Where no statute controls the award of prejudgment interest, the decision to award prejudgment interest is left to

10

the sound discretion of the trial court, which should rely upon equitable principles and public policy in making this decision." *See Citizens Nat'l Bank*, 142 S.W.3d at 487 (citing *Miga v. Jensen*, 25 S.W.3d 370, 381 (Tex. App.—Fort Worth 2000), *aff'd in part and rev'd in part*, 96 S.W.3d 207 (Tex. 2002)). Because Dandachli has not identified any statutory source of an award of pre-judgment interest, and because he has not identified any abuse of discretion on the part of the district court in denying an award of fees under the common law, we overrule the subissue. *See* Tex. R. App. P. 38.1(i).

**Findings Regarding Garcia and Active Euroworks**

In issues III through V,[3] Dandachli challenges the district court's take-nothing judgment on three of his claims. Specifically. Dandachli contends that the district court erred by: (1) failing to find that Garcia breached his fiduciary duties to Active Motorwerks, (2) failing to find that Active Euroworks engaged in unfair competition, and (3) failing to find that certain actions by Garcia constituted a breach of the Partnership Agreement. Because it is unclear whether Dandachli challenges the legal or factual sufficiency of the evidence to support the district court's findings, we will evaluate both.

"When a party attacks the legal sufficiency of an adverse finding on an issue on which []he has the burden of proof, []he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). In assessing a legal-sufficiency challenge, we consider whether the evidence presented at trial would enable a reasonable and fair-minded

---

[3] We postpone analysis of Dandachli's second issue, which challenges the calculation of damages, because our disposition of that issue turns in part on our analysis of Dandachli's other issues. *See* Tex. R. App. P. 47.1.

factfinder to reach the verdict under review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In doing so, we view the evidence in the light most favorable to the finding, indulging every reasonable inference that would support it and disregarding contrary evidence unless a reasonable factfinder could not. *See id.*

"When a party attacks the factual sufficiency of an adverse finding on an issue on which []he has the burden of proof, []he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co.*, 46 S.W.3d at 242. "When reviewing an assertion that the evidence is factually insufficient to support a finding, a court of appeals sets aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, it determines that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). When conducting a factual-sufficiency review, a court must not substitute its judgment for that of the factfinder, who "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

*Garcia's Alleged Breach of Fiduciary Duty*

In his third issue, Dandachli contends the district court erred in entering a take-nothing judgment on his claim that Garcia had breached his fiduciary duties to Dandachli and to Active Motorwerks. We disagree.

"[T]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal*

12

*Church v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010); *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)). "Generally, fiduciaries owe the following duties . . . the duty of loyalty and utmost good faith; duty of candor; duty to refrain from self-dealing; duty to act with integrity; duty of fair, honest dealing; and the duty of full disclosure." *Wolf v. Ramirez*, 622 S.W. 3d 126, 142 (Tex. App.—El Paso Aug. 31, 2020, no pet.) (footnotes and citations omitted). "Texas law undeniably recognizes that partners owe one another a fiduciary duty." *Bohatch v. Butler & Binion*, 905 S.W.2d 597, 602 (Tex. App.—Houston [14th Dist.] 1995, writ granted), *aff'd*, 977 S.W.2d 543 (1998) (citing *Fitz–Gerald v. Hull*, 237 S.W.2d 256, 264–65 (1951); *Johnson v. Peckham*, 120 S.W.2d 786, 787–88 (1938); *Kunz v. Huddleston*, 546 S.W.2d 685, 688 (Tex. App.—El Paso 1977, writ ref'd n.r.e.)).

Given certain unchallenged findings of fact, Dandachli satisfied his burden to show that Garcia breached his fiduciary duties to Dandachli and to Active Motorwerks. The district court found that Dandachli and Garcia entered into a partnership in February of 2013. The court further found that, while the two were still partners, Garcia "took partnership property from the location where Active Motorwerks conducted business and took steps to delete Defendant Dandachli's access to the Active Motorwerks QuickBooks system." At trial, Garcia himself conceded that he used that property in conjunction with his new automotive shop in Pflugerville, and it is undisputed that Garcia took steps to redirect over 800 Active Motorwerks customers to Active Euroworks. In addition, the district court found that Garcia, without Dandachli's knowledge or approval and while the two were still partners, "transferred the funds in the Active Motorwerks bank account on which both he and Defendant Dandachli were authorized signers into an account controlled solely by Plaintiff Garcia." These actions reflect a

13

lack of candor and loyalty, a failure to act in good faith, and an attempt at self-dealing. *See Lifshutz v. Lifshutz*, 199 S.W.3d 9, 18 (Tex. App.—San Antonio 2006, pet. denied) (explaining that "fiduciary is under an obligation not to usurp corporate opportunities for personal gain"). *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 510–11 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (summarizing fiduciary limitations on plans to launch competing enterprise and specifying that fiduciary may not solicit customers or appropriate equipment); *Hawthorne v. Guenther*, 917 S.W.2d 924, 934 (Tex. App.—Beaumont 1996, writ denied) (holding partner had breached duty when she "loaned herself large sums of money from the partnership's funds without informing the other partners").

Yet while Dandachli may have satisfied his burden with respect to the elements of existence of and breach of the duty, it does not necessarily follow that he is entitled to relief from that grievance. Texas law affords an aggrieved individual several remedies for breach of fiduciary duty. These include, inter alia, actual damages, exemplary damages, disgorgement, and recission of contract. *See Kahn v. Seely*, 980 S.W.2d 794, 799 (Tex. App.—San Antonio 1998, pet. denied) (actual damages); *McCullough v. Scarbrough, Medlin & Assocs.*, 435 S.W.3d 871, 911 (Tex. App.—Dallas 2014, pet. denied) (exemplary damages); *ERI Consulting Eng'rs*, 318 S.W.3d at 873 (disgorgement); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 2000 (same); *Archer v. Griffith*, 390 S.W.2d 735, 738–39 (Tex. 1964) (rescission). In this case, as compensation for the breach of fiduciary duties, Dandachli sought an additional $71,778.40 in damages. Dandachli derives this sum from evidence of monies Garcia obtained while operating Active Euroworks and from his theory that "all of the profits and payments would have been split between Garcia and Dandachli" had Garcia not breached his fiduciary duty by opening and operating the competing enterprise. However, the district court made no finding regarding

14

Garcia's profits from the operation of Active Euroworks. Moreover, Dandachli presumes that all of Garcia's profits were made while the two men were still partners, but the district court made no finding regarding the date the partnership ended. Nor did either party specifically request any findings regarding the alleged breach of fiduciary duty or any profit Garcia might have made while operating Active Euroworks. As an appellate court, we must assume that any omitted, unrequested findings support the judgment. *See* Tex. R. Civ. P. 299; *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989); *Williams v. Milliger*, 352 S.W.2d 794, 795 (Tex. App. 1961, writ ref'd n.r.e.) ("It is implied in support of the judgment that the court found against the defendant on this issue since the court made no specific finding on such issue and none was requested."). In other words, we must infer that the district court concluded: (1) that the fiduciary relationship had already ended when Garcia began earning profits from Active Euroworks, (2) that Dandachli was not harmed by Garcia's operation of Active Euroworks, or (3) that Dandachli simply failed to prove any damages incurred. We overrule Dandachli's third issue.

*Unfair Competition by Active Euroworks*

In his fourth issue, Dandachli contends, "The district court erred in failing to conclude that Active Euroworks unfairly competed." Although it is not entirely clear from his brief, given the authorities Dandachli cites, Dandachli appears to argue that Active Euroworks unfairly competed by engaging in misappropriation of trade secrets. *See U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc*., 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied) (setting forth elements of trade-secret misappropriation and explaining that misappropriation is a

15

form of unfair competition). Yet Dandachli expressly nonsuited his misappropriation theory on the first day of trial. We therefore overrule this issue.[4]

### *Garcia's Alleged Breach of Contract*

In his fifth issue, Dandachli contends that the district court erred by failing to find that Garcia had "breached the partnership agreement by requiring a salary and requiring that he be paid more than a 50% share of the net profits." We disagree.

In support of his contention, Dandachli argues that "[i]t is undisputed that Garcia required that he be paid a salary" and that Garcia "was paid approximately $40,000" more than Dandachli over the course of 40 months. Yet Garcia, while testifying, repeatedly disputed Dandachli's characterization of Garcia's salary expectations and any profit Garcia had made during his time at Active Motorwerks. Moreover, the district court found that Dandachli's failure "to maintain the books and records of the Partnership ma[de] it impossible to establish the amounts [sic] of distributions paid to each partner." And while Dandachli contests whether it was his obligation to handle the accounting for Active Motorwerks, there is no dispute that the partners failed to maintain accurate financial records. Indeed, Dandachli himself spent much of the five-day trial revising his own calculation of damages due to bookkeeping discrepancies and other accounting errors. Thus, on this record, Dandachli cannot establish this alleged breach as a matter of law. *See, e.g.*, *Balli v. Shiery*, No. 05-95-00103-CV, 1996 WL 457447, at *2 (Tex. App.—Dallas Aug. 9, 1996, no writ) (op.) (holding that appellants could not prevail on sufficiency challenge to award of no damages where evidence of damages was "controverted" at

---

[4] To the extent Dandachli intends to argue that Garcia or Active Euroworks engaged in unfair competition in some other respect, we would deem that argument inadequately briefed for failure to provide and apply the governing authorities. *See* Tex. R. App. P. 38.1(i).

16

trial). Nor can he show that the failure to find such a breach contradicts the great weight of the evidence. *See id.* As a consequence, he cannot prevail on appeal, and we overrule the issue.

**Findings Regarding Dandachli**

In what he styles as his sixth issue, Dandachli contends, "The evidence was neither factually nor legally sufficient to support the finding that Dandachli breached any contract or his fiduciary duties." We disagree with both arguments.

When the party challenging the legal sufficiency of the evidence supporting a finding did not have the burden of proof on that issue at trial, the party must show "that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). There is no evidence to support a finding if: (1) the record bears no evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). More than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). We will consider evidence favorable to the challenged finding if the factfinder could reasonably do so and disregard evidence contrary to the finding unless a reasonable factfinder could not disregard it. *Shields*, 526 S.W.3d at 480.

"When a party attacks the factual sufficiency of an adverse finding on an issue on which the opposing party has the burden of proof, we should set aside the verdict only if the evidence supporting the . . . finding is so weak as to be clearly wrong and manifestly unjust."

*Bechtel Corp. v. CITGO Prod. Pipeline Co.*, 271 S.W.3d 898, 916 (Tex. App. Austin—2008, no pet.) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We may not substitute our own judgment for that of the factfinder, even if the evidence would support a different result. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

*Breach of Contract*

On this record, Dandachli cannot show the evidence legally or factually insufficient to support the district court's finding that Dandachli breached the contract. The district court found that Dandachli had breached the contract by, inter alia, moving to Lebanon and thereby failing to "provide [his] full-time services and best efforts on behalf of the partnership," by "fail[ing] to maintain accurate records," and by locking Garcia out of the facility. Dandachli challenges the characterization of his actions as breach of contract—asserting that the contract does not address these matters—and argues that Garcia presented no evidence of damages arising from any alleged breach. But to whatever extent there was any silence or ambiguity regarding Dandachli's obligations under the contract, it fell within the province of the district court, as factfinder, to resolve that silence or ambiguity. *See Williams v. Williams*, 246 S.W.3d 207, 211 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *Arredondo v. City of Dallas*, 79 S.W.3d 657, 668 (Tex. App.—Dallas 2002, pet. denied). Moreover, Garcia testified that he lost access to "close to 70-80,000 [dollars] total" in equipment that he personally owned when Dandachli locked him out of the facility and that Dandachli prevented him from "us[ing] any of the other company equipment." Garcia further testified—and Dandachli conceded—that little or no automotive work could be undertaken without this equipment. The

18

evidence is therefore both legally and factually sufficient to support the findings, *Peña*, 442 S.W.3d at 263; *Cain*, 709 S.W.2d at 176, and we overrule the subissue.

### *Breach of Fiduciary Duty*

Similarly, Dandachli cannot show the evidence legally or factually insufficient to support the district court's finding that Dandachli breached his fiduciary duties to his partner. Undisputed aspects of the record reflect that Dandachli changed the locks on the facility without Garcia's knowledge or approval, deprived Garcia of the equipment necessary to carry out the business, and attempted to redirect nearly every dollar left in the partnership's bank account to his own personal account. On this record, we cannot say there is no evidence of breach of fiduciary duty. *See Peña*, 442 S.W.3d at 263. Nor can we say the finding is clearly wrong or manifestly unjust. *See Cain*, 709 S.W.2d at 176. We therefore overrule the issues.

## Calculation of Damages

In his second issue, Dandachli contends the district court, in calculating the damages arising from Garcia's breach of contract, "erred in awarding only part of the amounts owed to Dandachli." Specifically, Dandachli argues that Section 2.3 of the Partnership Agreement requires that Dandachli recover 100% of the payments he personally made on the Equipment Lease and 100% of Dandachli's loan to Active Motorwerks, rather than the 50% of those respective amounts awarded by the district court. We review the interpretation of an unambiguous contract de novo. *See URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). Whether a contractual provision is ambiguous is a question of law that is also subject to de novo review. *See id.* If a contract is ambiguous, we will defer to the factfinder to determine what the parties intended. *Williams*, 246 S.W.3d at 211; *Arredondo*, 79 S.W.3d at 668.

19

We begin with the district court's relevant findings of fact. With respect to the Equipment Lease, the district court found:

> On July 21, 2015, Defendant Dandachli, as lessor, and the Partnership, as lessee, executed a Lease Purchase Agreement. The terms of the Lease Purchase Agreement required the Partnership to make monthly payments of $2895 to Defendant Dandachli for the lease of certain equipment, beginning September 1, 2015. . . . The Partnership did not make all the required monthly $2895 payments.

The district court further found[5] that Dandachli had personally made the payments required by the Lease Purchase Agreement in a total amount of $11,524 "between September and December 2015." With respect to the loan, the district court found that Dandachli had loaned $43,464 to the partnership. Because these findings are supported by the record and not challenged on appeal, they are binding on this Court. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986) ("When findings of fact are filed and are unchallenged, as here, they . . . are binding on an appellate court unless the contrary is established as a matter of law, or if there is no evidence to support the finding." (citing *Swanson v. Swanson*, 228 S.W.2d 156 (Tex. 1950))).

Dandachli contends he should recover 100% of these sums pursuant to Section 2.3 of the Partnership Agreement, which provides:

> The Partnership shall maintain a capital account record for each partner. All initial capital contributions and subsequent capital contributions made by Hassan Dandachli and Mario Garcia into the Partnership shall remain the property of each and shall be reimbursed to them at any time as per their request and or/upon withdrawal/dissolution of the Partnership.

---

[5] The district court included the remaining findings set forth in this paragraph as conclusions of law, but we will construe them as findings of fact. *See Ray v. Farmers State Bank of Hart*, 576 S.W.2d 607, 608 n.1 (Tex. 1979); *Antrim v. State*, 868 S.W.2d 809, 812 (Tex. App.—Austin 1993, no writ).

20

Characterizing the lease payments and the loan as "capital contributions" and arguing that "there was no question that Garcia withdrew from the partnership," he reasons that "those amounts were due in full." We disagree with his reasoning.

The lease is governed by the Lease Purchase Agreement in conjunction with the Partnership Agreement. The Lease Purchase Agreement provides that the partnership—not Garcia—would be responsible for any payments due on the lease. And the Partnership Agreement provides that Garcia and Dandachli each have a 50% share in the partnership. Thus, if the partnership had followed through with its obligations under the Lease Purchase Agreement, Dandachli would have been responsible for half of that sum. Accordingly, Dandachli has not satisfied his burden to show how the district court erred by awarding Dandachli half of the amount he paid toward the sums due and owing under the Lease Purchase Agreement.

It is unclear from the record what terms governed Dandachli's $43,464 loan to the partnership. Dandachli argues that the capital-contribution provision of the Partnership Agreement governs but provides no evidence or authority in support of that argument. The Partnership Agreement itself does not define "capital contribution," and the district court made no specific findings regarding the meaning of that term, the timing of the loan, or what the loan was used for. Ambiguous terms of a contract must be discerned by the factfinder. *See, e.g.*, *Holmes v. Newman*, No. 01-16-00311-CV, 2017 WL 2871786, at *4 (Tex. App.—Houston [1st Dist.] July 6, 2017, no pet.) (mem. op.) ("[T]he court cannot determine from the face of this contract what the parties meant when they agreed that [the plaintiff] would be entitled to the 'first return of capital.'" (quoting the contract)); *In re P.C.S.*, 320 S.W.3d 525, 539 (Tex. App.—Dallas 2010, pet. denied) (disagreeing with dissent as to meaning of undefined phrase "return of . . . capital" (quoting Tex. Fam. Code 154.062(c))); *cf. Dimock Operating Co. v. Sutherland Energy Co.*,

21

No. 07-16-00230-CV, 2018 WL 2074643, at *4 (Tex. App.—Amarillo Apr. 24, 2018, pet. denied) (mem. op.) (looking to definition in contract to resolve dispute over meaning of "capital costs"). On this record, because the phrase is ambiguous and because neither party proposed findings regarding its meaning, we must defer to the district court's construction of the Partnership Agreement and its implicit rejection of Dandachli's arguments regarding reimbursement of the loan as a "capital contribution." *See* Tex. R. Civ. P. 299. We therefore overrule the issue.

**Award of Certain Equipment to Garcia**

In his final issue on appeal, Dandachli contends that "[t]he trial court also erred by awarding injunctive relief to Garcia that was neither pleaded nor requested." Yet Dandachli has not identified any injunctive relief afforded to Garcia. An injunction is an order "commanding or preventing an action." *See Injunction*, *Black's Law Dictionary* (11th ed. 2019). As the Supreme Court has explained, an injunction operates to force or restrain an act by a party. *See Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000). Here, Dandachli complains only of Garcia's recovery of certain equipment used by Active Motorwerks. Dandachli provides no support for his implicit assertion that the recovery of personal property constitutes an award of injunctive relief. We therefore overrule the issue. *See* Tex. R. App. P. 38.1(i).

## CONCLUSION

For the reasons stated herein, we affirm the judgment in part, reverse in part, and remand the matter for further proceedings consistent with this opinion.

22

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed in Part, Reversed and Remanded in Part

Filed:   July 23, 2021